**SOUTHLAND INV. CO., Inc., v. LOFTON.**

**No. 5981.**

Court of Appeal of Louisiana.
Second Circuit.

Feb. 7, 1940.

John F. Phillips, of Shreveport, for appellant.

Donald Lavine, of Oil City, for appellee.

DREW, Judge.

For a cause of action, plaintiff filed the following petition:

"1. That Emmett Lofton, a resident of Caddo Parish, is indebted unto petitioner in the sum of $154.68, with interest at the rate of 8% per annum from August 1, 1938, for this, to-wit:

"2. That on the 4th day of July, 1937, the Oil City Motor Company, Inc., sold and delivered unto Emmett Lofton a certain new 1937 model Tudor Ford automobile, bearing motor number 296,422, for a total consideration of $787.15, of which $150.67 was paid in cash and the said Emmett Lofton executed his promissory note for $636.48, said amount to be paid in 18 monthly installments of $35.36 each, the first payment being due and payable on the 8th day of August, 1937, and subsequent installments being due and payable monthly thereafter.

"3. To secure the payment of said note with interest, costs and attorney's fees, the said Oil City Motor Company retained a chattel mortgage and vendor's lien and special mortgage upon the said automobile, which chattel mortgage and note provided that failure to pay any installment when due should mature and make exigible the entire unpaid amount of said note, with interest and 15% attorney's fees, all of which is shown by said note and certified copy of chattel mortgage being attached hereto and made a part hereof by reference.

"4. Petitioner now shows that the said defendant paid the sum of $206.80 upon said note, same being less than six full monthly payments, leaving a balance due and unpaid in the sum of $429.68.

"5. Petitioner now shows that on the 29th day of June, 1938, the said Emmett Lofton, wishing to liquidate his account insofar as possible, he having defaulted in the terms of the chattel mortgage, delivered the car to petitioner with authority that petitioner sell the same and credit the net proceeds of the sale price of said automobile to the account of petitioner, as shown by instrument in writing executed by the said defendant, attached to and made a part hereof.

"6. Petitioner now shows that, in accordance with the terms and authority granted to petitioner by the said Emmett Lofton, the said automobile was sold on the 1st day of August, 1938, to Sid Henry, a resident of San Antonio, Texas, for the sum of $275.00, which amount was credited upon the amount owing by defendant and, after said credit was made, it left the said defendant indebted unto petitioner in the sum of $154.68, with interest at the rate of 8% from said August 1, 1938, as hereinbefore set out, and for which petitioner is entitled to and desires a judgment in its favor and against the defendant.

"Wherefore, premises and annexed documents considered, petitioner prays for service and citation upon the said Emmett Lofton, according to law, and that after due proceedings had there be judgment in favor of petitioner and against the defendant in the full sum of $154.68, with interest at 8% from August 1, 1938, and all costs; and an additional 15% upon the whole amount to be collected as attorney's fees."

The note duly assigned to plaintiff by the Oil City Motor Company was attached to the petition.

Defendant filed exceptions of no cause or right of action to said petition and, after trial of same, the lower court sustained the exceptions and dismissed plaintiff's suit. From this judgment plaintiff is prosecuting this appeal.

The opinion of the lower court was not reduced to writing and the attorney for appellee has made no appearance in this court, therefore, we are not positive as to the reasons of the lower court for sustaining the exceptions. We assume, from the statement in plaintiff's brief, that the lower court followed the decision of the Orleans Court of Appeal in the case of Home Finance Service Company v. Wamsley, 176 So. 415, 417. In that case the court held that Act No. 28 of 1934, known as the Deficiency Judgment Act, applied to private sales of mortgaged property as well as to judicial sales. That case was in most respects very similar to the one at bar. In the instant case the mortgagor executed a collateral agreement at the time of executing the mortgage. In the mortgage itself we find the following provisions:

"5. Time is of the essence of this mortgage, and in the event the mortgagor defaults in any payment or fails to comply with any condition of this mortgage, or a proceeding in bankruptcy, receivership or insolvency be instituted against the mortgagor or his property, or the mortgagee deems himself insecure, or the mortgagee deems the property in danger of misuse or confiscation, said note and mortgage shall be in default and all sums of money remaining unpaid shall immediately become due and payable; mortgagor does hereby confess judgment in favor of mortgagee for such amount due hereunder, waiving citations and other legal process and all legal delays. Upon such default the mortgagee may cause the property herein described to be seized and sold under executory process and all legal process in any court of the State, without appraisement, to the highest bidder, payable in cash (notice and the benefit of all appraisement laws being hereby waived, more particularly the three days' notice provided by Article 735 of the Revised Code of Louisiana, notice of seizure by sheriff, constable or justice of the peace, and the three days' delay provided by Article 655 of the Revised Code of Louisiana); or the said mortgagee may and is hereby authorized to take possession of said property, including any equipment or accessories thereto, without legal process, without demand (possession after default being unlawful), and for this purpose the mortgagee may enter upon the premises where said property may be and remove same. Mortgagee may take possession of any other property in above described motor vehicle at the time of repossession and hold the same temporarily for the mortgagor without any responsibility or liability on the part of the mortgagee. The mortgagee may resell said property, so retaken, at public or private sale, without demand for performance, with or without notice to the mortgagor (if given notice by mail to address below being sufficient), with or without having such property at the place of sale, and upon such terms and in such manner as the mortgagee may determine; the mortgagee may bid at any public sale. From the proceeds of any such sale, the mortgagee shall deduct all expenses for retaking, repairing and selling such property, including a reasonable attorney's fee; the balance thereof shall be applied to the amount due any surplus shall be paid over to the mortgagor; in case of deficiency the mortgagor shall pay the same with interest and the mortgagor does hereby confess judgment in the amount of such deficiency."

This mortgage was executed on July 14, 1937, and on June 6, 1938, the mortgagor executed before two witnesses the follow-

ing document, which is attached to the petition:

"6–29–1938.
Southland Investment Company, Inc., Shreveport, La.

Gentlemen:
Having defaulted in the terms of the chattel mortgage on my 1937 Tudor Ford, Serial Number ———, Motor Number 296,-422, and wishing to liquidate my account, I, or we, voluntarily surrender possession of said automobile and consent to its sale and the application of the net proceeds upon my indebtedness, in accordance with the provisions of the chattel mortgage.

E. Lofton."

In the cited case, the court said:

"'Section 2. That this Act declares a public policy and the provisions thereof cannot, and shall not be waived by a debtor, but it shall only apply to mortgages, contracts, debts or other obligations made, or arising, after this Act becomes effective.'

"It is clear from the foregoing that it has been declared to be against the public policy of this state for any holder of a mortgage to provoke a judicial sale without first having the encumbered property appraised, and that, if such mortgage holder does foreclose without such appraisal, he is prohibited from thereafter proceeding against the mortgagor for any deficiency remaining on the debt.

"It is to be noted that the statute does not suppress the waiver by the mortgagor of the benefit of appraisement of the mortgaged property in foreclosure proceedings. But the enactment restrains, as contrary to public policy, the practice of permitting the mortgagee to sell the encumbered property without having it appraised, if he desires to later maintain action against his debtor for a deficiency judgment. In other words, the mortgagee has the right to sell the property without appraisal but, if he elects to do so, he suffers the penalty of losing his right to obtain a deficiency judgment in the event the proceeds of the sale are insufficient to liquidate the debt.

"In the case at bar, the collateral contract transfers and vests the title to the mortgaged property in the mortgagee and compels the mortgagor, in case of default, to deliver the property to the mortgagee to be sold by him at private sale for any price he can obtain. While the statute under consideration refers particularly to judicial sales without appraisement, we are of the opinion that the statement of the public policy therein is sufficiently broad to disclose that it was the intention of the lawmakers to place a stamp of disapproval on any practice whereby encumbered property is sold without judicial appraisement, and to sanction the type of agreement, such as the one before us, would be to allow the employment of a device calculated to defeat the underlying purposes which prompted the passage of the law.

"This act became effective on July 12, 1934. The chattel mortgage was granted by the defendant on August 22, 1934, and was therefore covered by the provisions of the statute.

"The suit is admittedly for the deficient balance due on the promissory note of the defendant after crediting the proceeds of the sale price of his automobile. We think that the action is prohibited by Act No. 28 of 1934 as being inimical to the public policy of this state."

We fully agree with this opinion and the finding therein is applicable to the case at bar. If there had been no collateral agreement, which clearly evidences the intent to defeat the underlying purposes which prompted the passage of the Act, and on June 6, 1938, defendant had decided it was to his advantage to turn over his car to his mortgagee for it to sell at private sale and apply the proceeds to the balance due, a different situation would confront us. Under this last stated condition, certainly Act No. 28 of 1934 could not apply, but that is not the situation in the case at bar.

The judgment of the lower court is affirmed, with costs.