76 So.2d 581 (1954)
THE FARMERVILLE BANK, Plaintiff-Appellant,
v.
Bernard B. SCHEEN et al., Defendants-Appellees.
No. 8157.
Court of Appeal of Louisiana, Second Circuit.
December 1, 1954.
Rehearing Denied January 4, 1955.
*582 Dhu & Lea S. Thompson, Monroe, for appellant.
Hayes & Harkey, Monroe, for Scheen. Robert T. Farr, Monroe, for Mingledorff.
AYRES, Judge.
Plaintiff, as the holder and owner of a promissory note executed and signed by defendant, Bernard B. Scheen, March 30, 1953, for $1,182.50, payable to plaintiff in 14 monthly installments of $86.00 each, as shown in an act of chattel mortgage with which it was paraphed and identified, and which note was endorsed by T. D. Mingledorff, brought action and prayed for judgment against the aforesaid maker and endorser, in solido, for the aforesaid sum, less a credit of $58.96 and a further credit of $560 as of July 18, 1953, with 8 percent per annum interest thereon from May 8, 1953, until paid, together with 15 percent additional on principal and interest as attorney's fees, and for costs.
Plaintiff's demands were rejected, and from the judgment rendered plaintiff prosecutes a devolutive appeal.
The facts which gave rise to this action, briefly stated, are that defendant Scheen purchased a Studebaker automobile from Emco, Inc., a corporation whose president and principal stockholder was the defendant, Mingledorff. The purchase price for the automobile was borrowed from plaintiff and as security for which Scheen executed his note, secured by a chattel mortgage on the automobile, and as added security, Mingledorff endorsed the note for the loan which he had arranged with the Bank.
Scheen soon realized he would be unable to make the payments on the note and discussed the indebtedness with his endorser, whereupon, without consulting plaintiff or securing its permission or consent thereto, the maker and endorser determined upona course of requesting plaintiff to repossess the automobile and to sell it at private sale. In accordance therewith, Mingledorff prepared or caused to be prepared by his attorney an instrument, the pertinent part of which reads as follows:
"The undersigned being in default in payments due on said contract, the Bank has repossessed said automobile in accordance with the terms thereof, and has the right to sell it at public auction and recover a deficiency, if any, from the undersigned. In consideration of the sum of One Dollar to undersigned, in hand paid, receipt of which is hereby acknowledged, undersigned, in order to eliminate any deficiency, if possible, requests the Bank not to exercise its right to sell at public auction, but to sell said automobile by private negotiation and without posting public notices or advertising said sale, thereby saving the cost and expense of a public sale and, in the judgment of the undersigned, increasing the possibility of obtaining a higher price for said automobile as a result of private negotiation.
"The undersigned, therefore, does hereby waive posting of any notices or advertising the time and place of sale, notice to undersigned of the time, terms and place of said sale, and all other rights he may have concerning the foreclosure of the lein on or sale of said automobile, in order that the Bank may negotiate privately the sale of said automobile. The Bank agrees to pay undersigned any surplus arising from said sale, and the undersigned agrees to pay the Bank any deficiency resulting therefrom",
which was signed in Mingledorff's office by Scheen and left with Mingledorff, who thereafter conducted the negotiations with *583 plaintiff. Scheen parked the automobile in the rear of Mingledorff's office, where he delivered the keys. Pursuant to the agreement and Mingledorff's request of plaintiff, plaintiff sent its representative for the automobile, after which it was driven from its parked location to a private auction in Monroe, where it was sold at a public offering to the highest bidder for a price of $560, which was credited on the note, as hereinabove stated.
Alleging that the mortgaged automobile was sold at private sale and without appraisement, defendant Scheen pleads a discharge from the indebtedness under the Deficiency Judgment Statute, LSA-R.S. 13: 4106 et seq.
Without assigning any particular reasons therefor and without alluding to the aforesaid statute, defendant Mingledorff denied liability and alleged the facts concerning the so-called release of the automobile to be as follows:
"That on July 7, 1953, after it became certain that Bernard B. Scheen either would not or could not make the payments on this note, Bernard B. Scheen came to the office of respondent and after discussing the matter agreed that it would be best for him to release the automobile, securing this note, to plaintiff with the request that plaintiff sell this automobile at private sale to the best advantage for Scheen's use and benefit in order to avoid the cost and expense of a foreclosure on the mortgaged automobile and apply the proceeds to the note for the benefit of Scheen; Scheen would then pay plaintiff any balance that may be owed after this sale; that Scheen told respondent that he was particularly anxious for the matter to be handled in this manner to avoid court action, so that his credit would be protected;
"That Scheen signed such release with the request for private sale and with the promise to pay plaintiff any balance left on the note after the sale;
"That at this time Scheen assured respondent that he would pay in full any balance left on the note after the sale, and keep respondent from having to pay any part of the note;
"That respondent then presented this release and the automobile to plaintiff on behalf of Scheen; that prior to that presentation plaintiff had not asked for such a release, nor did it know that one was being made until it was given to plaintiff by respondent on behalf of Scheen;
"That at the time this release was signed by Scheen respondent believed that Scheen was sincere and honest in his promise to pay plaintiff any balance left on the note after the sale",
which allegations may be stated as a summary of his testimony given on the trial. Mingledorff, however, testified that in a discussion with Scheen as to the latter's inability to pay the note, it was agreed that both would endeavor to dispose of the automobile rather than have it repossessed inasmuch as Scheen desired to protect his credit; but, failing to make a sale, Mingledorff suggested to Scheen that he might return the car to plaintiff with the idea of having it sold at private sale and crediting the indebtedness with the proceeds. Scheen consented to this procedure and Mingledorff had his attorney prepare the instrument referred to hereinabove, and Mingledorff contacted the Bank and made the arrangements for disposition of the car. His testimony further was that he individually did not expect to get any benefit from this transaction but that the car was to be sold for the benefit of the parties that were concerned, and as privately as possible in order that no attorney's costs or fees would be incurred.
Scheen's defense was sustained by the trial court and Mingledorff was held discharged from liability under the provisions of LSA-C.C. Art. 3061, which provides:
"The surety is discharged when by the act of the creditor, the subrogation *584 to his rights, mortgages and privileges can no longer be operated in favor of the surety", (emphasis ours),
citing in support thereof Simmons v. Clark, La.App., 64 So.2d 520.
The Deficiency Judgment Act, supra, provides:
"In any case where any mortgagee or other creditor takes advantage of the waiver of appraisement of the debtor and provokes a judicial sale, without the benefit of appraisement, of the encumbered property, whether real or personal, or of both characters, and the proceeds of such sale are insufficient to satisfy the debt for which the property is sold, the debt nevertheless shall stand fully satisfied and discharged, * * * and such mortgagee or other creditor shall not thereafter have the right to proceed against the debtor or any other of his property for such deficiency, in any manner whatsoever."
§ 4107. "R.S. 13:4106 declares a public policy and the provisions thereof can not, and shall not be waived by a debtor, but it shall only apply to mortgages, contracts, debts or other obligations made, or arising on or after August 1, 1934."
In Home Finance Service v. Walmsley, 176 So. 415, it was held by the Orleans Court of Appeal in an opinion by Judge McCaleb, now associate justice of the Supreme Court, that a mortgagee's suit for the balance due on a note secured by mortgage, after crediting proceeds of a private sale of the mortgaged property, without appraisal, pursuant to a collateral contract, was prohibited by the deficiency judgment statute as being inimicable to the public policy of the state. That decision was followed by this court in Southland Inv. Co., Inc., v. Lofton, La.App., 194 So. 125, and in Futch v. Gregory, La.App., 40 So.2d 830, and by the Court of Appeal for the First Circuit in Farmer v. Smith, 57 So.2d 778.
The action for a deficiency judgment against the defendant Scheen, the maker of the note and the mortgagor of the automobile, under the facts and circumstances of this case, comes clearly within the prohibition of the statute and the judgment rejecting plaintiff's demands as to him is correct and will be affirmed.
As to the endorser, we find ourselves in disagreement with our learned brother of the district court, notwithstanding his reliance upon Simmons v. Clark, supra. Upon the facts of that particular case, we are in complete agreement with the ruling made. From a factual standpoint, the instant case is readily distinguishable from that case. For instance, in the Simmons case, the facts were that Charles Holmes and his wife executed a note for $1,836.58 in favor of the petitioner, which note was secured by a conventional mortgage. The mortgage contained the usual and customary security clauses, including waiver of appraisment. As security for that loan and as collateral therefor, the defendants, Lizzie Lee Clark and others, executed another mortgage on certain other real property securing their note for $1,800, which was the note therein sued upon and which they had given in pledge as collateral security for the payment of the note signed by Charles and Ola Lee Holmes. Both of the aforesaid notes and mortgages were given the same date. Simmons foreclosed via executory process on the mortgage and note which were executed by Charles Holmes and his wife. No defense was made to that suit nor were the parties to the collateral note and mortgage notified of that proceeding. The property subject to the mortgage was sold at sheriff's sale without appraisement for the price of $221.57. Simmons then instituted a suit for $1,439.07 as the unpaid balance of the Holmes note by filing suit on the collateral security note of $1,800. Exceptions of no cause or right of action were filed, tried and sustained, under the provisions of the deficiency judgment statute, based on the sale of the property mortgaged, without appraisement. By virtue of such procedure *585 under said statute, Holmes, the principal debtor, was released and discharged and, in fact, the debt itself discharged. Defendants then claimed that as petitioner had no further remedy against Holmes, he would have no cause or right of action as against the defendants, as their mortgage was primarily a collateral mortgage, given as security for the primary obligation, the Holmes mortgage and note, and invoked the provisions of LSA-C.C. Art. 3061, quoted hereinabove. By the act of the creditor, the subrogation to his rights, mortgages and privileges could no longer be operated in favor of the surety. The court summarized the facts and stated its ruling, with which we fully agree, in this language [64 So.2d 523]:
"Through the act of the creditor the property of the mortgagor, Holmes, was sold. The creditor now proceeds against the sureties for a deficiency judgment. No notice was given the surety of the original foreclosure proceeding against Holmes, nor were they requested to pay the indebtedness. There are no rights of the principal to which the sureties may be subrogated. Clearly, under the provisions of Article 3061, the petitioner has lost his rights against defendants."
The endorser in the instant case promoted the sale of the automobile at private sale and it was at his request and through his instigation that the creditor was prevailed upon, in the interest of all parties concerned, to sell the property at private sale under the promise that the Bank would be paid the balance due. The Bank did not initiate the proceedings but was induced by defendant endorser to take the action it did.
The facts and circumstances of the instant case are very similar to those in the case of Southland Inv. Co., Inc., v. Motor Sales Co., 198 La. 1028, 5 So.2d 324, 325. In that case the Supreme Court, through Chief Justice Fournet, stated:
"The facts of this case, as revealed by the record, show that the defendant Motor Sales Company, a company engaged in the business of buying and selling new and second-hand automobiles, entered into an agreement with the Southland Investment Company, Inc., whereby the sales consummated by the defendant company were refinanced by the investment company's purchase of the notes given to the defendant company in part payment of the automobiles purchased from them. Under this agreement the plaintiff was to reserve a portion of the amount paid for the notes in order that a fund might be accumulated to offset any loss the plaintiff might incur through these transactions. The plaintiff was charged with the duty of repossessing any cars upon which the installments were not paid and of turning them over to the defendant company within 90 days. It was understood that the defendants' liability, irrespective of the unconditional endorsement on the back of the notes, would only begin when these repossessed cars were so turned over to them. * * *
"The defendants contend that inasmuch as the automobiles repossessed and sold by the plaintiff, referred to and described in Exhibit A, were made at private sale and without benefit of appraisement, the debt became satisfied and discharged under the provisions of Act No. 28 of 1934 and that they (defendants), being secondarily liable on the instruments, were also relieved of any further liability thereon under Section 120 of Act No. 64 of 1904.
"By the provisions of Act No. 28 of 1934, the legislature declared as a public policy of this state that `where any mortgage or other creditor takes advantage of the waiver of appraisement of the debtor and provokes a judicial sale, without the benefit of appraisement, of the encumbered property, whether the same be real or personal, or of both characters; and the proceeds of such sale are insufficient to satisfy the debt for which said property is *586 sold, said debt shall nevertheless stand fully satisfied and discharged, and such mortgage or other creditor shall not thereafter have the right to proceed against the debtor or any other of his property for such deficiency, in no manner whatsoever.' Section 1.
"(1) Unquestionably this act was enacted for the benefit and protection of the mortgage debtor and, ordinarily, under the express provisions of Act No. 64 of 1904 (known as the Negotiable Instruments Act) `A person secondarily liable on the instrument is discharged * * * By any act which discharges the instrument * * *.' Section 120. According to the record as made up in this case, however, the cars listed and described in Exhibit A were repossessed and sold by the plaintiff at private sale for the best price obtainable with the consent and acquiescence of the defendants, for the best interest of all parties concerned. Under these circumstances we are of the opinion that the defendant is liable to the plaintiff for any amount remaining unpaid on the notes defendant transferred to it under the transactions listed in Exhibit A, which, as shown by the record, is $3,617.50".
As stated by the Supreme Court, the deficiency judgment statute was enacted for the benefit and protection of the mortgage debtor and nowhere does the statute refer to or mention public policy towards or relief for parties secondarily or otherwise obligated for the indebtedness, such as an endorser. Therefore, provisions of the statute pronouncing the principle of public policy is inapplicable under the facts and circumstances of this case to an endorser, whose rights and remedies are prescribed and governed by other applicable laws, particularly the articles of the Code pertaining to suretyship, the provisions of which were applied in the Simmons v. Clark case.
The endorser Mingledorff under the facts and circumstances of this case, as detailed hereinabove, is in no position to avail himself of such provisions and particularly the provisions of Art. LSA-C.C. 3061, but is precluded therefrom by his own actions, as was substantially held in Southland Inv. Co., Inc., v. Motor Sales Co., supra. Mingledorff actively promoted and negotiated the private sale of the automobile, as testified to by him, for the use and benefit of all parties concerned. He not only consented to and acquiesced in the sale but it was through his suggestion and promotion it was carried out. The record, however, reflects the utmost good faith of both plaintiff and the defendant endorser.
For the reasons herein assigned, it is therefore ordered, adjudged and decreed there be judgment herein in favor of plaintiff, The Farmerville Bank, against the defendant, T. D. Mingledorff, for the full sum of $1,182.50, less credits of $58.96 and $560.00 as of July 18, 1953, with 8 percent per annum interest thereon from May 9, 1953, until paid, together with 15 percent additional on principal and interest as attorney's fees, and for all costs of court and of this appeal, and that the judgment appealed be thus amended and, as amended, affirmed.
Affirmed in part and reversed in part.