79 So.2d 628 (1955)
Robert SOILEAU
v.
Shirley PITRE.
No. 3992.
Court of Appeal of Louisiana, First Circuit.
April 22, 1955.
*629 Rosamond J. Vidrine, Ville Platte, for appellant.
Jack C. Fruge, Ville Platte, for appellee.
LOTTINGER, Judge.
This is a suit on a promissory note in the sum of $300. The Lower Court rendered judgment in favor of defendant dismissing petitioner's suit, and the petitioner has appealed.
The facts, which are not in dispute, show that petitioner had sold defendant an automobile for the sum of about $1,200, in return for which defendant gave petitioner a promissory note secured by chattel mortgage. After making several payments on the note, the defendant was unable to continue making his regular payments and he gave petitioner a new open note in the sum of $300 and surrendered the car to petitioner. The petitioner sold the car, at private sale without appraisement, and now sues the defendant on the $300 note. The defendant claims that the sale of the automobile without appraisement extinguishes the entire debt under the provisions of LSA-R.S. 13:4106 and 13:4107.
The Lower Court agreed with the legal contentions of the defendant and dismissed petitioner's suit. The petitioner has taken this appeal.
The provisions of LSA-R.S. 13:4106 and 13:4107 are as follows:
"4106. Deficiency judgment prohibited if sale without appraisement
"In any case where any mortgagee or other creditor takes advantage of the waiver of appraisement of the debtor and provokes a judicial sale, without the benefit of appraisement, of the encumbered property, whether real or personal, or of both characters, and the proceeds of such sale are insufficient to satisfy the debt for which the property is sold, the debt nevertheless shall stand fully satisfied and discharged, and such mortgagee or other creditor shall not thereafter have the right to proceed against the debtor or any other of his property for such deficiency, in any manner whatsoever.
"4107. R.S. 13:4106 cannot be waived: operation prospective
"R.S. 13:4106 declares a public policy and the provisions thereof can not, and shall not be waived by a debtor, but it shall only apply to mortgages, contracts, debts or other obligations made or arising on or after August 1, 1934."
In Home Finance Service v. Walmsley, La.App., 176 So. 415, 416, the provisions of these statutes were applied to the factual situation wherein the mortgagor has surrendered the mortgaged property to the mortgagee for a private sale without appraisement the proceeds of the sale to be applied to the amount of the mortgage. In subsequent suit to recover the balance still due after the private sale, the Court said:
"Some time after the execution of the chattel mortgage and the agreement *630 above quoted, the defendant became delinquent in his payments and, according to plaintiff's testimony, he turned over the automobile to be sold for his account. The defendant contends, however, that the automobile was turned over to plaintiff for refinancing and not to be sold under the provisions of the collateral agreement.
"We need not consider at this moment whether the plaintiff's or the defendant's evidence should prevail in the case, because we are first confronted with the problem of determining whether this action for a deficiency may be maintained in view of the provisions of Act No. 28 of 1934.
"It is conceded by the plaintiff that she sold defendant's automobile under the collateral agreement and that the proceeds of the sale, after certain deductions, were credited against defendant's obligation on the chattel mortgage note.
"Counsel for plaintiff tells us that the collateral agreement is valid and enforceable, and he points with confidence to an identical case decided by Judge Janvier wherein an agreement such as this was upheld. See Mercantile Adjustment Agency v. Harry Wickes, No. 14862 of the docket of this court. However, that case was decided on June 20, 1934, prior to the passage of Act No. 28 of the regular session of the Legislature of 1934 [LSA-R.S. 14:4106 et seq.]"
In the Walmsley case, the Court held as follows:
"It is clear from the foregoing that it has been declared to be against the public policy of this state for any holder of a mortgage to provoke a judicial sale without first having the encumbered property appraised, and that, if such mortgage holder does foreclose without such appraisal, he is prohibited from thereafter proceeding against the mortgagor for any deficiency remaining on the debt.
"It is to be noted that the statute does not suppress the waiver by the mortgagor of the benefit of appraisement of the mortgaged property in foreclosure proceedings. But the enactment restrains, as contrary to public policy, the practice of permitting the mortgagee to sell the encumbered property without having it appraised, if he desires to later maintain action against his debtor for a deficiency judgment. In other words, the mortgagee has the right to sell the property without appraisal but, if he elects to do so, he suffers the penalty of losing his right to obtain a deficiency judgment in the event the proceeds of the sale are insufficient to liquidate the debt.
"In the case at bar, the collateral contract transfers and vests the title to the mortgaged property in the mortgagee and compels the mortgagor, in case of default, to deliver the property to the mortgagee to be sold by him at private sale for any price he can obtain. While the statute under consideration refers particularly to judicial sales without appraisement, we are of the opinion that the statement of the public policy therein is sufficiently broad to disclose that it was the intention of the lawmakers to place a stamp of disapproval on any practice whereby encumbered property is sold without judicial appraisement, and to sanction the type of agreement, such as the one before us, would be to allow the employment of a device calculated to defeat the underlying purposes which prompted the passage of the law."
The doctrine of the Walmsley case has been upheld in Southland Investment Company, Inc., v. Lofton, La.App., 194 So. 125; Liberal Finance Corporation v. Washington, La.App., 62 So.2d 545; Farmer v. Smith, La.App., 57 So.2d 778; Simmons v. Clark, La.App., 64 So.2d 520; and Farmer-ville *631 Bank v. Scheen, La.App., 76 So.2d 581, as well as in Futch v. Gregory, La. App., 40 So.2d 830, 832, wherein the Court said:
"These two decisions (the Walmsley and Lofton cases) hold that the 1934 act has application to a private sale of the mortgaged property by the mortgagee, which, of course, is always effected without the benefit of appraisement; and these holdings are based upon the public policy rule declared in the act. They fix a rule that when it appears that the surrender of possession of the mortgaged chattel with authority given the mortgagee to sell same, as was done in the case at bar, such action, presumably is but a step in the effort to circumvent the law. This, of course, should and will be thwarted by the courts. If this should not be done the beneficent provisions of the 1934 act would virtually be rendered ineffective and the law would be as it was prior to the passage of the 1934 act. The cited decisions announce a sane and reasonable construction of the pertinent law, and no good reason has been assigned why they should not be followed in the instant case, and they will be." (Parentheses ours.)
The case now before us merely presents another scheme to circumvent the provisions of LSA-R.S. 13:4106 and 13:4107. The petitioner contends that such a holding in this case would deprive the parties of their freedom to contract. Article 11 of the LSA-Civil Code prohibits individuals from entering into contracts which are against public good. The Legislature and judicial decisions of our state have declared similar actions to be against the public policy of our state. To enforce the contract entered into by the parties to this suit would, in effect, give the Court's approval to a contract entered into to circumvent the Legislative will and the public policy of this state.
For the reasons assigned, the judgment of the Lower Court will be affirmed, all costs of this appeal to be paid by petitioner.
Judgment affirmed.