REID, Judge.
The original petition filed on March 15, 1968, by Mavis Orgeron and Fedelise Theriot, Jr., alleges that on or about May 5, 1967, they purchased a new 1967 Ford Dump Truck, Model F850 of 12 cubic yards, and executed a note in favor of Louisiana Loan and Thrift Corporation, payable in monthly installments of $483.27, which note was secured by a vendor’s lien and chattel mortgage covering the said vehicle. Petitioners further allege that two months later they sold the vehicle to the defendant, Gilbert Griffin, with the express written understanding that Griffin would accept delivery of the vehicle and bind and obligate himself to assume the note and mortgage securing said note, but that Griffin failed and refused to make the payments as required by the note and petitioners had consequently been forced to pay the sum of $1,993.08 on said note, together with interest. The petition also alleges that on February 15, 1968, Gilbert Griffin released possession of the vehicle to petitioners, and they pray for judgment in the amount of $1,993.08, together with 8% interest, attorney’s fees and costs.
Answer was filed on behalf of Gilbert Griffin, denying claims of plaintiffs and alleging that the truck was illegally repossessed from him by plaintiffs and that after the illegal repossession of the truck the plaintiffs succeeded in getting him to affix his mark to a document represented to him as a voluntary surrender exonerating him from all liability arising from the purchase of the said truck. Then assuming the position of plaintiff in reconvention he alleged he had paid the sum of $3,000.00 to the de *839 fendants in reconvention as a down payment on the truck and subsequently made three monthly payments of $1,449.81 to be applied on the chattel mortgage note, and prayed for judgment in the sum of $8,449.-81, representing $2,000.00 for embarrassment caused by illegal repossession, $2,-000.00 for mental anguish caused by illegal repossession, and reimbursement of $4,449.-81 paid on account of the purchase price. Orgeron and Theriot filed a general denial in answer to the reconventional demand.
Orgeron and Theriot then filed a supplemental and amending petition alleging that defendant Griffin had further breached his contract with them in failing to pay the insurance premium for liability and collision insurance on the said vehicle in the amount of $1,290.20, and prayed for additional judgment in that amount. An answer was filed on behalf of Griffin, denying the allegations of the supplemental and amending petition.
The matter was tried on March 3, 1969, and on the same day judgment was rendered in favor of Gilbert Griffin and against the plaintiffs, Mavis Orgeron and Fedelise Theriot, rejecting their demands and dismissing their suits, and in favor of Mavis Orgeron and Fedelise Theriot and against plaintiff in reconvention, Gilbert Griffin, rejecting his demands and dismissing same, each party to bear their respective costs. The judgment was read and signed April 21, 1969, and a motion for a devolutive appeal was granted the plaintiffs on April 24,1969.
The appellee has not taken any appeal from the judgment rejecting his reconven-tional demand, nor has he answered the appeal in this Court. In fact he prays that the judgment of the trial Court be affirmed.
Plaintiffs-appellants allege the following specifications of error: (1) In failing to properly interpret the agreement executed between the parties, and (2) in failing to award damages to plaintiffs caused by defendant’s violation of the agreement.
The trial Judge gave very short written reasons for judgment, which were dictated into the record at the conclusion of the trial. He held: “Plaintiff failed to carry his burden of proof that the defendant had agreed at the time of the release to pay the then outstanding monthly indebtedness due on the truck involved herein.”
He rejected the reconventional demands of defendant on the same ground, that is, that he had failed to carry his burden of proof, and he rendered judgment accordingly.
We find that the judgment of the trial Court is correct and we are hereby affirming it.
There is no question but what the plaintiffs took possession of the truck at defendant’s home, without his knowledge or consent. They both drove out to defendant’s home, one got out of the car, found the keys in the truck, started it and drove off.
Mrs. Griffin was sitting in her living room and saw the truck pull off and stated she thought it was her son when she saw the back of a man’s head in the truck but she did not know who had taken the truck. She immediately got in touch with her husband and informed him that someone had taken the truck. The next day defendant went to a notary’s office and signed a release in the following words, to-wit:
“I hereby release possession of one certain 1967 Ford Dump Truck, Model F850, Serial No. T85-KUA 28304, to Mavis Orgeron and Fedalise Theriot, Jr.”
The defendant Griffin could not write so he signed by making his mark. This release was dated February 15,1968.
The defendant paid three of the notes which he was obligated to pay in the amount of $483.27 each. He claimed that he quit paying because he did not get his title certificate, which was in the possession of the Louisiana Loan & Thrift Cor *840 poration, the holder of the original vendor’s lien and mortgage on the truck. He paid the three installments to Thor, Incorporated, which was really a partnership between the two plaintiffs, and they in turn paid the Louisiana Loan & Thrift Corporation.
On February 14, 1968, the day that the truck was repossessed by the plaintiffs and the day before the release was signed, Mrs. Griffin, who was able to read and write, issued a check to plaintiffs for an additional monthly installment. When they found out that the truck had been picked up, her husband instructed her and she immediately called the bank to stop payment. They told her that it was too late that day, although there was someone in the bank, and told her to come to the bank the next morning, which she did. However, the check was later honored by the bank and on the complaint of the defendant the bank refunded the money. Subsequent to that, the plaintiffs paid the notes, amounting to the sum of $1,993.08, for which they seek judgment plus some $1,290.20 which they paid for insurance.
The defendant testified that he signed the release after the truck had been picked up, with the understanding that he would not have to pay anything further on the truck. He seems to have been an ignorant man who could not read and write, and, in fact, could not speak English and had to testify with an interpretor.
Plaintiffs had secured possession of the truck by going and picking it up without the knowledge and consent of the defendant, although they did testify that he had told them to find a buyer as he would like to dispose of the truck and settle the matter.
Plaintiffs failed to find a buyer but retained possession of the truck and had possession of it up to the time that the suit was filed. At no time did they make any effort to return the truck to the defendant.
We believe that this comes under the provisions of LSA-R.S. 13:4106, which reads in pertinent part as follows, to-wit:
“If a mortgagee or other creditor takes advantage of a waiver of appraisement of his property, movable, immovable, or both, by a debtor, and the proceeds of the judicial sale thereof are insufficient to satisfy the debt for which the property was sold, the debt nevertheless shall stand fully satisfied and discharged insofar as it constitutes a personal obligation of the debtor. The mortgagee or other creditor shall not have a right thereafter to proceed against the debtor or any of his other property for such deficiency, except as provided in the next paragraph.”
This act has been interpreted by many decisions of our Courts, in which they upheld the act and did not permit a deficiency judgment where the property under the mortgage was sold at public sale without appraisement or at private sale or repossessed by the vendor or the mortgagee.
The Second Circuit, in the case of Shreveport Auto Finance Corporation v. Harrington, La.App., 113 So.2d 476, 477, held as follows:
“The testimony on trial of this case was not transcribed, and a stipulation of fact was executed by counsel for the parties litigant and filed in the record. The stipulation recites that defendant bought an automobile from the Saxon Auto Sales, making a small down payment and giving a note for the balance; that he found himself unable to meet his obligation on the note and advised the Saxon Auto Sales that he wished to surrender the car and be relieved of the balance due; that ‘Saxon Auto Sales agreed to allow him to do this, explaining that market value of the car had dropped, and it would be necessary to give a note for $300, to reimburse them for the loss. Defendant gave the note and signed title to the car.’ Upon defendant’s failure to make payment of the $300 note, this suit was instituted by plaintiff, Shreveport Auto Finance Corporation, which was named as payee in the note.”
*841 The Court rendered judgment reversing the judgment of the lower Court and rendering judgment in favor of the defendant, rejecting plaintiff’s demands at its cost.
Our brothers of the Third Circuit in the case of Pearson v. Kahey, La.App., 160 So.2d 777, held as follows, to-wit:
“ ‘The second defense herein is that the surrender of the tractor by the debt- or to the creditor and the sale at private sale without appraisement constitutes a payment of the indebtedness against it. Defendant cites in support of his contention herein the case of Soileau v. Pitre, (La.App.) 79 So.2d 628; Simmons v. Clark, (La.App.) 64 So.2d 520; Futch v. Gregory, (La.App.) 40 So.2d 830; Home Finance Service v. Walmsley, (La.App.) 176 So. 415; and Shreveport Auto Finance Co. v. Harrington, (La.App.) 113 So.2d 476. This principle of law is very firmly embedded and rooted in our jurisprudence and the cases are legion to the same effect that if the property under mortgage is sold at judicial sale or repossessed and sold at private sale, without benefit of appraisement, it extinguishes the debt which encumbers the property sold. The language of the statute also provides that it satisfies the ‘debt for which the property was sold’ and which in this instance was the chattel mortgage note for $2200, being the only then existing debt against the property surrendered. * *
This Circuit held in the case of David Investment Company v. Wright, La.App., 89 So.2d 442, as follows, to-wit:
“The plaintiff mortgagee had seized a part of the mortgaged property as was its right. It had the legal right to have said property sold at sheriff’s sale with proper appraisement. Upon obtaining the amount of the sale price, minus costs incurred, the mortgagee then had the right to obtain a deficiency judgment for the balance then due on the secured debt.
“However, mortgagee, holding the legal rights set forth, consented at mortgagor’s insistence to release the cattle seized to the mortgagor in order ‘to avoid further costs and to secure a better price in the decreasing cattle market.’
“Without doubting appellant’s argument that in this present instance it was to the benefit of the mortgagor for her to sell the cattle at the public cattle auction barn, in view of the declining market and to save the additional court costs and expense of advertising for a judicial sale, nevertheless under the stringent public policy provisions of the Deficiency Judgment- Act as interpreted, a mortgage creditor is absolutely barred from a deficiency judgment where he provokes a sale, judicial or private, without the benefit of appraisement, LSA-R.S. 13:4106, see cases cited Soileau v. Pitre, La.App. 1 Cir., 79 So.2d 628. As we stated therein, 79 So.2d 631: ‘To enforce the contract entered into by the parties to this suit would, in effect, give the Court’s approval to a contract entered into to circumvent the Legislative will and the public policy of this state.’ ”
The plaintiffs took possession of this truck and one day later secured the act of release by the defendant. They have not returned the truck to him, have not instituted any foreclosure proceedings seeking a judicial sale with appraisement, nor, if they have made any disposition of the truck, have they made any accounting to defendant for the amount they might have received from the sale of this truck.
Under these circumstances, we are of the opinion that the plaintiffs accepted the return of the truck in settlement of the indebtedness and are barred from securing any deficiency judgment against the defendant.
For these reasons the judgment of the lower Court is hereby affirmed, the parties to bear their own respective costs in the lower Court, and the cost of this appeal to be borne by the appellants.
Affirmed.