306 So.2d 74 (1974)
RIMMER & GARRETT, INC., Plaintiff-Appellant,
v.
DONNELL & FUSSELL et al., Defendants-Appellees.
No. 12447.
Court of Appeal of Louisiana, Second Circuit.
December 10, 1974.
Rehearing Denied January 21, 1975.
Writs Refused March 14, 1975.
*75 Aaron, Aaron & Chambers, by Noble M. Chambers, Jr., Crowley, for appellant.
E. Rudolph McIntyre, Winnsboro, and Hudson, Potts & Bernstein by Jesse D. McDonald and Ben R. Hachey, Monroe, for appellees.
Before AYRES, HALL and DENNIS, JJ.
En Banc. Rehearing Denied, January 21, 1975.
HALL, Judge.
This suit arises out of a subcontract between Rimmer & Garrett, Inc. as contractor and Donnell & Fussell as subcontractor for the clearing and grubbing of land under a prime contract between the Police Jury of Rapides Parish and Rimmer & Garrett, Inc. The contractor sued the subcontractor, alleging the subcontractor breached its contract by failing to do any work on the project for several months, necessitating a termination of the contract and a takeover of the project by the contractor. The contractor sought damages in the amount of $297,000 for its cost in completing the project over and above the subcontract price, loss of profit, and penalties assessed to it by the owner because of late completion. The subcontractor reconvened against the contractor alleging it complied with the terms of the subcontract and that the contractor terminated the subcontract and took over the project without justification. The subcontractor sought damages in the amount of $80,714.67 including retainage for work completed, payment for completed work, loss of profits, and an amount due on an unrelated transaction.
After trial, the district court found Rimmer & Garrett, Inc. was not justified in terminating the subcontract and breached its contract by terminating it and taking over the project. Donnell & Fussell was awarded damages in the amount of $21,722.38, including retainage, the value of work completed, other expenses, and the amount due on the unrelated transaction. The subcontractor's demand for loss of profits was rejected as being too speculative.
Rimmer & Garrett, Inc. appealed, specifying the district court erred in failing to find Donnell & Fussell breached its contract thus entitling plaintiff to recover damages from defendants. Donnell & Fussell answered the appeal, praying for an increase in the award to include loss of *76 profits it would have made had it been allowed to complete the contract. We affirm the judgment of the district court.
The Police Jury of Rapides Parish contracted with Rimmer & Garrett, Inc. for the clearing and grubbing of 859 acres of the reservoir area of Kincaid Multi-Purpose Structure No. 1 within the Bayou Rapides Water Shed approximately 10 miles west of Alexandria, Louisiana. The contract was dated September 3, 1969, called for completion within 529 days, and provided for penalties of $150 per day as liquidated damages. The contract price was $402,532. Rimmer & Garrett, Inc. subcontracted the entire job to Donnell & Fussell, a partnership, by a written subcontract of the same date at a contract price of $347,936.
On September 5, 1969, the Police Jury through the Soil Conservation Service which had the responsibility of overseeing the project on behalf of the owner, notified the contractor to commence work and work was commenced by Donnell & Fussell on September 15. Work continued until November 18, 1969, when because of heavy rains and site and weather conditions a suspend work order was issued. At this time defendant had cleared a total of 125 acres, including 110 acres classified as swampland and 15 acres classified as hillside land, for which it was paid. Defendant had also partially cleared an additional 65 acres for which it was not paid. As of that date defendant had completed 14.9% of the project and had used up 7.6% of the allowed time.
On November 26, 1969, a resume work order was issued but very shortly thereafter on December 5, 1969, another suspend work order was issued, again due to site and weather conditions. This suspend work order remained in effect until April 23, 1970, when a resume work order was issued by the Soil Conservation Service Engineer who was in charge of the project.
After the resume work order was issued, Tom Fussell of Donnell & Fussell viewed the job site and determined it was still too wet and it would be more feasible to wait awhile before resuming work to allow for additional drying of the site. During the following weeks there was contact by the Soil Conservation Service Engineer with the contractor urging the resumption of work and telephone contact between the contractor's personnel and the subcontractor's personnel prompting a return to work. Although the subcontractor was making some preparations to resume the job, it continued to delay starting back to work because of site conditions. There is evidence in the record that there was an unusually heavy rainfall during the month of May. In fact, a suspend order was in effect from May 2 to May 7. Larry Garrett, plaintiff's superintendent, corroborated to some extent Fussell's opinion that the job site was too wet for work to proceed during this period of time.
On June 5, 1970, Tom Garrett of Rimmer & Garrett wrote Fussell advising it was imperative that work be started immediately and asking that Fussell advise immediately of his intentions. No reply was made to that letter.
On June 12, 1970, Garrett again wrote Donnell & Fussell stating that no work had been done, efforts to contact Donnell & Fussell to find out their work schedule had been to no avail, and, accordingly, Donnell & Fussell was placed on formal notice that "if work is not commenced on this project within five days from receipt of this letter we will take immediate steps to cancel your contract".
In response to this letter, Tom Fussell went to the job site, walked it over, determined it was beginning to dry and that efficient work could be started in about two weeks. On June 15, Fussell wrote to Rimmer & Garrett advising that he had walked over the area, that he could work bulldozers there within two weeks and he intended to start work at that time.
Fussell also telephoned Garrett on June 15 to talk the situation over with him. The details of the telephone conversation and the ultimate effect of the conversation *77 are in dispute. Fussell testified Garrett said he would stand on the five day deadline set forth in the June 12 letter. Fussell understood the contract to be canceled in that he could or would not meet that deadline. Garrett testified he would not retract the five day deadline but that it was not "carved in concrete" and he still expected performance by Donnell & Fussell after that date.
There was apparently no further contact between the parties relating to performance of the contract. On June 18, Rimmer & Garrett moved their own dragline onto the job site and began doing some ditching and drainage work. On July 17, Rimmer & Garrett sent a telegram to Donnell & Fussell advising that the contract is terminated per the June 12 letter. Shortly thereafter, in the latter part of July, Rimmer & Garrett moved in more equipment and undertook to do the clearing work on a full scale basis.
Rimmer & Garrett met with numerous problems in completing the project under the methods and procedures employed by it, resulting in a cost to it substantially in excess of the subcontract price and in being assessed with penalties for delayed completion.
The key issue is whether Donnell & Fussell was in default under its contract at the time Rimmer & Garrett canceled it and took over the job.
The provisions of the prime contract between the Police Jury and Rimmer & Garrett are made a part of the subcontract between Rimmer & Garrett and Donnell & Fussell by reference. The contract provides that work shall be completed within 529 calendar days after receipt of notice to proceed. If the contractor refuses or fails to prosecute the work "with such diligence as will insure its completion within the time specified in this contract, or any extension thereof, or fails to complete said work within such time" the contract may be terminated by written notice. The contract provides for the submission of a construction schedule and further provides that if the contractor falls behind the schedule, certain requirements may be made by the contracting officer, a failure to comply with which shall be grounds for termination of the contractor's right to proceed with the work.
The evidence discloses that the work done by the subcontractor in the fall of 1970 was satisfactory and ahead of schedule at the time bad weather set in and work was suspended. Although chargeable days began to run after issuance of the resume work order in the latter part of April, 1971, work was not substantially behind schedule, on a percentage basis, at the middle of June when the correspondence and telephone conversation between Fussell and Garrett took place. Fussell was of the opinion there would be no problem completing the work within the contract period. His opinion is supported by the authoritative expert opinion of E. A. Woodard who has many years experience in reservoir clearing work and by the opinion of another expert whose testimony was stipulated. Woodard estimated time of completion on the basis of his knowledge of the site, experience, and on the basis of the methods which Donnell & Fussell proposed to employ. Donnell & Fussell had considerable experience in this kind of work and its judgment as to the proper time to start back to work, the methods to be used, and time required for completion is entitled to considerable weight.
Although the contracting officer and Rimmer & Garrett pressed Donnell & Fussell to resume work after issuance of the April 23 order, it does not appear that either pursued the provisions of the contract relative to revision of the construction schedule and the like, contemplated as prerequisites to termination of the contractor's right to proceed with the work.
Donnell & Fussell's obligation under the contract was to prosecute the work with such diligence as will insure its completion within the time specified. The evidence *78 preponderates that Donnell & Fussell was in compliance with this obligation at the time Rimmer & Garrett on June 12, imposed the five day deadline and stipulated cancellation of the contract upon noncompliance with the deadline.
The evidence is that Donnell & Fussell intended to resume work and did not intend to abandon or unnecessarily delay the project. It was an experienced contractor in this kind of work and had performed satisfactorily in the early stages of the project. The evidence is that it could have timely completed the project if it had been allowed to proceed in the latter part of June or even July.
It is understandable that Rimmer & Garrett was concerned with work being resumed and with seeing that the project was timely completed. Nevertheless, we conclude, as did the trial judge, that it acted prematurely and without justification in terminating the contract when it did.
Rimmer & Garrett argues that Donnell & Fussell was expected to go back to work even after the June correspondence and telephone conversation and it was not until after Donnell & Fussell continued to fail to perform that the contract was canceled by the telegram of July 17. It is our view, however, that Donnell & Fussell was justified in believing the contract was canceled as of the passage of the five day deadline after the June 12 letter. Garrett's own version of the June 15 telephone conversation is that the deadline would stand and not be retracted. Some equipment was moved onto the site by Rimmer & Garrett on June 18. There was no further serious effort, if any at all, by Rimmer & Garrett to get Donnell & Fussell back to work after June 15.
Rimmer & Garrett also argues that Donnell & Fussell's lack of interest in this contract was due to other work the subcontractor had going on and to the fact that most of the potential profit on the job had been made in the fall of 1970 when the easiest part of the clearing had been done. The evidence does not support these arguments for the reasons previously expressed.
Donnell & Fussell contend the amount awarded should be increased to include the loss of profits it would have made if allowed to complete the project. The district court concluded Donnell & Fussell failed to bear its burden of proving loss of profits with the certainty required by law and that the evidence on this issue was speculative and conjectural. We agree. Although evidence was offered to show anticipated costs and profits, both Fussell and the expert Woodard conceded in effect that you can never be sure of a profit in land clearing work until the job is completed. Fussell said it was like shooting craps. Jordan v. Travelers Insurance Company, 257 La. 995, 245 So.2d 151 (1971), cited by Donnell & Fussell, does not require a contrary result because in the instant case it is not reasonably certain that profits in any amount were lost.
For the reasons assigned, the judgment of the district court is affirmed at appellant's costs.
Affirmed.