PONTCHARTRAIN STATE
BANK, Plaintiff,

v.

Robert W. DUDEN, Defendant.

PONTCHARTRAIN STATE
BANK, Plaintiff,

v.

CONDO RIO, INC. George K. Wilcox, Jr., W. B. Nowland, Jack S. Brown, Joseph A. Gennitti, Ronald L. Bramble, William B. Ofsoqitz, Harold J. Smith, Paul Thomson, Defendants.

CONDO/RIO, INC. and Robert W. Duden, Plaintiffs,

v.

PONTCHARTRAIN STATE
BANK, Defendant.

Civ. A. Nos. 77–684, 77–685 and 77–793.

United States District Court,
E. D. Louisiana.

Sept. 17, 1980.

---

Malcolm B. Robinson, Jr., Metairie, La., for plaintiff.

Julian R. Murray, Jr., Michael H. Ellis, New Orleans, La., for defendants Robert W. Duden and Condo Rio, Inc.

## FINDINGS OF FACT AND CONCLUSIONS OF LAW

CASSIBRY, District Judge:

These cases were tried to the court sitting without a jury on a former date. After considering the pleadings, the evidence, and

the arguments of counsel, I enter the following findings of fact and conclusions of law.

## FINDINGS OF FACT

Case No. 77–684:

1. Plaintiff, Pontchartrain State Bank (hereafter PSB), was at all times material herein a Louisiana banking corporation domiciled in the Parish of Jefferson.

2. Defendant Robert W. Duden was at all times herein a resident of the State of Texas.

3. Defendant Condo Rio, Inc. (hereafter Condo Rio) is a Texas corporation with its principal place of business in the City of Brownsville, Texas. Duden was president of Condo Rio in 1976.

4. In March, 1976, Duden and George K. Wilcox travelled to Metairie, Louisiana and conferred with the executive vice–president of PSB, Larry Ott. Wilcox and Duden requested a $375,000.00 loan to be made to a group of shareholders of Condo Rio stock, known as the "Condominium Trust Group" (the "Group"). Wilcox was trustee for the Condominium Trust Group.

5. PSB did not ever make the proposed $375,000.00 loan, but subsequently, PSB made a $40,000.00 personal loan to Duden. Duden signed a promissory note evidencing the debt and pledged 50 of his own shares of Condo Rio stock as security for the loan.

6. The promissory note executed by Duden provides for interest and attorney's fees. The present balance of the loan, exclusive of attorney's fees, is $56,000.00.

7. Duden claimed that a certain $15,000.00 "chargeback" PSB made to his checking account at PSB released him from liability on the $40,000.00 note to the Bank. This transaction, however, was unrelated to collecting payment on the $40,000.00 debt. The loan to Duden had not yet been funded when the chargeback debit was made to Duden's account.

8. There was no action by PSB to attempt to execute on or sell the security for the $40,000.00 debt (Duden's stock in Condo Rio).

9. The chargeback to Duden's account created an overdraft and several checks were returned to the payee "NSF". The Bank subsequently rectified the error and sent a letter of explanation to Duden's Texas bank. Duden settled liability for the actual funds charged back to his account with PSB.

10. Duden failed to introduce sufficient proof that he was damaged by the $15,000.00 chargeback and resulting overdraft in his account.

Case No. 77–793

1. The parties in this case are the same as the parties in case No. 77–684, except that the plaintiff and defendant roles are reversed. I find the same facts giving rise to case No. 77–684 contributed to case No. 77–793, and I incorporate my findings of fact in that case herein.

2. Duden organized Condo Rio to realize his dream of building a condominium project in Brownsville, Texas. He went to great lengths to personally finance and complete the initial stages of planning and development of the project. At a certain point, however, he and Condo Rio were running short of money. He sought financial support and eventually found seven individuals who agreed to use their financial position to attempt to obtain a substantial loan from a bank in return for ownership in Condo Rio. The seven individuals formed the Condominium Trust Group.

3. Duden and Wilcox testified that at the meeting at PSB on March 12, 1976, Duden did not intend to deliver 145 shares of Condo Rio stock (showing ownership in the seven members of the Condominium Trust Group) to the members of the Condominium Trust Group until: (1) the stock was paid for; (2) the Group obtained a $375,000.00 loan; and (3) the Group further agreed to provide Condo Rio with a letter of credit for $100,000.00.

4. Duden and Wilcox did deliver 145 shares of Condo Rio stock to PSB, along with irrevocable stock powers, continuing guarantees from each of the seven members

of the Group, and financial statements from each of the members of the Group. In addition, Wilcox presented to Ott a "Voting Trust Agreement" that gave him (Wilcox) the authority to bind the Group and expedite matters by signing on behalf of the Group. The agreement gave Wilcox complete control of the 145 shares of Condo Rio stock. The corporate records of Condo Rio showed that the seven members of the Group owned the stock at that time.

5. A period of time elapsed and no loan of $375,000.00 was made. Eventually, PSB made a $40,000.00 loan to Wilcox as trustee for the Condominium Trust Group. Wilcox pledged the 145 shares of stock as security for the loan and executed a note as trustee for the Group. Wilcox received a check for the $40,000.00 loan proceeds. The loan was dated March 24, 1976.

6. Duden failed to prove by a preponderance of the evidence that Ott and PSB knew that ownership and delivery of the stock to the Group was conditioned upon obtaining a loan of $375,000.00.

7. Duden failed to prove by a preponderance of the evidence that Ott committed PSB to making a $375,000.00 loan at the March 12, 1976 meeting.

8. Duden and Condo Rio failed to prove by a preponderance of the evidence that Condo Rio would have obtained interim financing for construction of the condominium project in Texas. Even though the financial climate appeared favorable, the testimony was primarily speculative and was far from conclusive.

9. Duden testified that persons who executed options on the condominium apartments would be bound to actually purchase a particular apartment only after being given an opportunity to see the completed unit and then executing a binding sales contract. It is a matter of speculation whether those who had taken options would ever sign binding sales agreements.

10. Duden and Albert Clay testified that SGI had issued a commitment for permanent financing for the condominium project. The expert testimony of Louis G.

Shushan indicated, however, that several factors could have affected the obligation of SGI to actually make a permanent loan. I find that it is a matter of speculation whether conditions for obtaining permanent financing from SGI would have been met.

11. Duden testified to the projected cost to complete the condominium project. He offered plans, specifications, and architect's renderings to support his testimony. Considering the lapse of time between the dates the documents were prepared outlining the project cost and when actual construction would have taken place, and possible unknown intervening events, it is a matter of speculation whether the project would have been completed at the cost Duden projected.

12. Duden offered similar testimony to indicate what the completed apartment units would have sold for. Again, it is too speculative to conclude that the units would have been sold at all, or that they would have been sold at the projected price. It is therefore speculative to conclude that the project would have been profitable or to calculate with any certainty what the profit would have been.

13. PSB offered testimony from several witnesses that Condo Rio and Duden could have mitigated the alleged damages entirely through various banking devices.

## CONCLUSIONS OF LAW

Case No. 77–684

1. The court has jurisdiction based on diversity of citizenship and an amount in controversy in excess of $10,000.00. 28 U.S.C. § 1332 (1976). I must apply the law of the State of Louisiana to the resolution of this case. *Erie Railroad Co. v. Tompkins*, 304 U.S. 64, 58 S.Ct. 817, 82 L.Ed. 1188 (1938).

2. The deficiency judgment statutes, La.Code Civ.Proc.Ann. art. 2771 (West 1961) and La.Rev.Stat.Ann. § 13:4106 (West 1968), do not apply to relieve Duden of responsibility for his debt in a transaction under these circumstances. PSB did not attempt to execute on or sell the security

for Duden's $40,000.00 debt (the 50 shares of Condo Rio stock), the only event that might have brought the statutes into play. *See Powell v. Motors Insurance Corp.*, 235 So.2d 593 (La. 1st Cir.Ct.App.1970); *Orgeron v. Griffin*, 230 So.2d 838 (La. 1st Cir.Ct.App.1970); *Bourgeois v. Sazdoff*, 209 So.2d 320 (La. 4th Cir.Ct.App.1968); *Soileau v. Pitre*, 79 So.2d 628 (La. 1st Cir.Ct.App.1955); *Farmer v. Smith*, 57 So.2d 778 (La. 1st Cir.Ct.App.1952). The $15,000.00 chargeback to Duden's account was unrelated to the loan transaction, except that the bank account was opened to receive the expected loan funds. *See Humble Oil & Refining Co. v. McCasland*, 322 So.2d 357 (La. 2d Cir.Ct.App.1975) (debt for gasoline unrelated to open account for inventory; deficiency judgment statutes not applicable).

■ 3. Duden failed to prove by a preponderance of the evidence that he was damaged by the $15,000.00 chargeback and resulting overdraft. Duden therefore failed to prove liability on the part of PSB that might otherwise arise under La.Rev.Stat.Ann. §§ 10:4–402 and 10:4–403 (West Supp. 1980).

■ 4. PSB proved by a preponderance of the evidence that Duden executed a promissory note for $40,000.00, providing for interest, costs, and attorney's fees. PSB further proved by a preponderance of the evidence that no payments have been made on the debt, and the present principal and interest owing is $56,000.00, exclusive of attorney's fees. PSB is entitled to damages in that amount. Duden failed to prove liability for set–off of those damages.

Case No. 77–793

1. The court has jurisdiction based on diversity of citizenship and an amount in controversy in excess of $10,000.00. 28 U.S.C. § 1332 (1976). I must apply the law of the State of Louisiana to the resolution of this case. *Erie Railroad Co. v. Tompkins*, 304 U.S. 64, 58 S.Ct. 817, 82 L.Ed. 1188 (1938).

2. Duden and Condo Rio failed to prove that PSB made a binding commitment to make a $375,000.00 loan to anyone. *See* La.Civ.Code Ann. art. 1761 (West 1952).

■ 3. A certificate of stock serves as prima facie evidence that the person to whom the certificate was issued is the owner of that stock. The issuance of a certificate of stock by a corporation is a declaration by that company that the person in whose name the certificate is made out is a shareholder in the company. La.Rev.Stat. Ann. §§ 12:601, 12:602 (West 1969); *Smith v. Smith*, 311 So.2d 514 (La.3d Cir.Ct.App.), *writ denied*, 313 So.2d 840 (La.1975). Duden and Condo Rio failed to prove that the 145 shares of stock in question were owned by them and not owned by the members of the Condominium Trust Group in whose names they were made out. *Id.; see Dardeau v. Fontenot*, 326 So.2d 521 (La.3d Cir.Ct.App.1976) (claim of non–delivery).

■ 4. The pledge of the 145 shares of Condo Rio stock prevented the stock's return to the trustee who pledged it until payment was received for the underlying debt. La.Civ.Code Ann. arts. 3133 and 3152 (West 1952). *See* La.Rev.Stat.Ann. § 12:601 (West 1969) (power of legal owner of stock to pledge). The essence of conversion is the wrongful deprivation of the claimant's possession, to which he is rightfully entitled. *Occidental of Umm al Qaywayn, Inc. v. A Certain Cargo of Petroleum Laden Aboard the Tanker Dauntless Colocotronis*, 577 F.2d 1196 (5th Cir. 1978), *cert. denied*, 442 U.S. 928, 99 S.Ct. 2857, 61 L.Ed.2d 296 (1979); *Importsales, Inc. v. Lindeman*, 231 La. 663, 92 So.2d 574 (La. 1957). Because Wilcox had pledged the stock as security for the $40,000.00 debt, PSB did not convert the stock because it did not deprive the owner of possession wrongfully. Thus, plaintiffs failed to prove that PSB was at fault for holding the stock for the $40,000.00 debt of the Group. *See* La. Civ.Code Ann. art. 2315 (West 1979).

■ 5. Plaintiff bears the burden of establishing each and every element of damages claimed. *SFI, Inc. v. U. S. Fire*

Insurance Co., 453 F.Supp. 502 (M.D.La. 1978); *McDonald v. American Fire & Indemnity Insurance Co.,* 378 So.2d 1013, 1015 (La.2d Cir.Ct.App.1979); *Cheramie v. Jones,* 327 So.2d 601, 602–03 (La.4th Cir.Ct.App. 1976). While the usual standard of proof to a legal certainty is not required in proving lost profits resulting from an offense or quasi–offense, it is well established that the loss must be proved with reasonable certainty and damages should not be allowed where the lost profits claimed are purely conjectural. *Rimmer & Garrett, Inc. v. Donnell & Fussell,* 306 So.2d 74 (La.2d Cir. Ct.App.), *writ refused, aff'd on law,* 309 So.2d 351 (La.1975); *Shreveport Laundries, Inc. v. Red Iron Drilling Co.,* 192 So. 895 (La.2d Cir.Ct.App.1939), *writ denied* (La. 1940); *see New Orleans Shrimp Co. v. Duplantis Truck Lines, Inc.,* 283 So.2d 521 (La.1st Cir.Ct.App.1973). Because it is speculative whether the condominium project would have even been built absent the acts plaintiffs claim were wrongful, and because in any case it is conjectural at best whether the project would have yielded a profit, I would not have been able to award damages for lost profits.

■ 6. An injured person must use all reasonable means to minimize, or mitigate, any losses sustained, or that may be sustained. *McDonald v. American Fire & Indemnity Insurance Co.,* 378 So.2d 1013, 1015 (La.2d Cir.Ct.App.1979); *Roy v. Robin,* 173 So.2d 222 (La.3d Cir.Ct.App.), *writ refused,* 247 La. 877, 175 So.2d 110 (La.1965). Defendant proved that plaintiffs failed to use all reasonable means to attempt to mitigate their claimed impending damages, and might have thereby prevented all damages from defendant's alleged wrongful acts. On this ground, as well, I would have denied damages had I held that defendant wrongfully held the stock.

For the foregoing reasons,

IT IS ORDERED that judgment be entered in case No. 77–684 in favor of plaintiff Pontchartrain State Bank and against the defendant, Robert W. Duden, in the sum of $40,000.00 together with interest thereon at the rate of eight percent per annum from April 15, 1976, until paid, attorney's fees of twenty–five percent of the principal and interest due, and all costs of these proceedings. In case No. 77–793, let judgment be entered in favor of defendant Pontchartrain State Bank and against plaintiffs Robert W. Duden and Condo Rio, Inc. dismissing their suit with prejudice at their costs.