### HOME FINANCE SERVICE v. WALMSLEY.

#### No. 16626.

Court of Appeal of Louisiana. Orleans.
Oct. 18, 1937.

Jos. A. Casey, of New Orleans, for appellant.

T. S. Walmsley, of New Orleans, for appellee.

McCALEB, Judge.

This is a suit by Mrs. Mary Lauel, widow of Henry L. Heymann, doing business as

the Home Finance Service, against Carroll B. Walmsley to recover the sum of $128.30, with interest and attorney fees, representing the balance due on a promissory note made by the defendant on August 22, 1934, in the sum of $300.

The defendant admits the making of the note and alleges that its payment was secured by a chattel mortgage on an automobile owned by him. He further avers that the automobile should have been seized and sold at public auction in accordance with the provisions of law, in satisfaction of the debt due by him to the plaintiff, but that, notwithstanding, the plaintiff induced him to turn over his car to her for the purpose of refinancing it, and that it was sold by her for his account without his consent and in violation of law.

The trial judge, after hearing the evidence, dismissed the plaintiff's suit, and she has prosecuted this appeal.

The facts of the case show that on August 22, 1934, the defendant borrowed from the plaintiff the sum of $300. As security for this debt, he executed a promissory note secured by a chattel mortgage on his automobile.

At the time the mortgage was executed, Walmsley signed and delivered to the plaintiff an agreement reading as follows:

"August 22nd 1934

"For and in consideration of a loan granted to me by the Home Finance Service upon my automobile as security for said loan, and as an inducement to them to grant said loan, in order to secure them in the event of my failure to pay the installments when due, and in order to save unnecessary and excessive court costs which would result from a seizure by the Constable or Sheriff, which costs would serve only to decrease the net amount to be realized from said sale, I do hereby transfer, abandon and subrogate all my right, title and interest in and to my Nash Coupe Motor No. B73177 Serial No. B60521 unto the Home Finance Service; I agree that said automobile is to be delivered by me immediately upon demand, verbally and without notice in advance and without having to resort to court action to obtain said possession. In the event it shall become necessary in the opinion of the holder of the note herein to repossess or institute a search for the herein mortgaged property, or to employ an attorney or adjuster for the purpose of effecting settlement, the fee and expense of said party is to be borne by myself and

to be secured by the mortgage herein granted.

"In accordance with the above, I hereby authorize the Home Finance Service to sell my automobile for such price as they can obtain; to make any and such repairs, replacement of parts, painting and anything that in their opinion would serve to bring a better price for my car; to take in trade any other car or cars for my car, with the understanding, however, that in so doing the Home Finance Service or their agent will not be responsible for any miscalculation with reference to the value of said trade in; to pay a salesman's commission not to exceed 15% on the selling price of the car or cars.

"I understand and agree that the costs of locating, repossessing, repairs, replacements, painting, storage, commissions for selling, and any other expenses incurred, are to be deducted from the selling price of the car or cars, and my note is to be credited with the net amount remaining. Should this amount be less than the balance due on my note, I understand that I must make this difference good in payments satisfactory to the holder or holders of said note, hereby giving them the right to proceed against me should same not be paid on amicable demand. Likewise, if the net amount realized after paying all expenses is more than the balance due on my note, this difference is to be returned to me."

Some time after the execution of the chattel mortgage and the agreement above quoted, the defendant became delinquent in his payments and, according to plaintiff's testimony, he turned over the automobile to be sold for his account. The defendant contends, however, that the automobile was turned over to plaintiff for refinancing and not to be sold under the provisions of the collateral agreement.

We need not consider at this moment whether the plaintiff's or the defendant's evidence should prevail in the case, because we are first confronted with the problem of determining whether this action for a deficiency may be maintained in view of the provisions of Act No. 28 of 1934.

It is conceded by the plaintiff that she sold defendant's automobile under the collateral agreement and that the proceeds of the sale, after certain deductions, were credited against defendant's obligation on the chattel mortgage note.

■ Counsel for plaintiff tells us that the collateral agreement is valid and en-

forceable, and he points with confidence to an identical case decided by Judge Janvier wherein an agreement such as this was upheld. See Mercantile Adjustment Agency v. Harry Wickes, et al.,[1] No. 14862 of the docket of this court. However, that case was decided on June 20, 1934, prior to the passage of Act No. 28 of the regular session of the Legislature in 1934. The pertinent sections of that statute provide as follows:

"Section 1. Be it enacted by the Legislature of Louisiana, That in any case where any mortgage or other creditor takes advantage of the waiver of appraisement of the debtor and provokes a judicial sale, without the benefit of appraisement, of the encumbered property, whether the same be real or personal, or of both characters; and the proceeds of such sale are insufficient to satisfy the debt for which said property is sold, said debt shall nevertheless stand fully satisfied and discharged, and such mortgage or other creditor shall not thereafter have the right to proceed against the debtor or any other of his property for such deficiency, in no manner whatsoever.

"Section 2. That this Act declares a public policy and the provisions thereof can not, and shall not be waived by a debtor, but it shall only apply to mortgages, contracts, debts or other obligations made, or arising, after this Act becomes effective."

It is clear from the foregoing that it has been declared to be against the public policy of this state for any holder of a mortgage to provoke a judicial sale without first having the encumbered property appraised, and that, if such mortgage holder does foreclose without such appraisal, he is prohibited from thereafter proceeding against the mortgagor for any deficiency remaining on the debt.

It is to be noted that the statute does not suppress the waiver by the mortgagor of the benefit of appraisement of the mortgaged property in foreclosure proceedings. But the enactment restrains, as contrary to public policy, the practice of permitting the mortgagee to sell the encumbered property without having it appraised, if he desires to later maintain action against his debtor for a deficiency judgment. In other words, the mortgagee has the right to sell the property without appraisal but, if he elects to do so, he suffers the penalty of losing his right to obtain a deficiency judgment in the event the proceeds of the sale are insufficient to liquidate the debt.

In the case at bar, the collateral contract transfers and vests the title to the mortgaged property in the mortgagee and compels the mortgagor, in case of default, to deliver the property to the mortgagee to be sold by him at private sale for any price he can obtain. While the statute under consideration refers particularly to judicial sales without appraisement, we are of the opinion that the statement of the public policy therein is sufficiently broad to disclose that it was the intention of the lawmakers to place a stamp of disapproval on any practice whereby encumbered property is sold without judicial appraisement, and to sanction the type of agreement, such as the one before us, would be to allow the employment of a device calculated to defeat the underlying purposes which prompted the passage of the law.

This act became effective on July 12, 1934. The chattel mortgage was granted by the defendant on August 22, 1934, and was therefore covered by the provisions of the statute.

The suit is admittedly for the deficient balance due on the promissory note of the defendant after crediting the proceeds of the sale price of his automobile. We think that the action is prohibited by Act No. 28 of 1934 as being inimical to the public policy of this state.

In view of our holding, it is unnecessary to consider the other questions presented in the case.

For the reasons assigned, the judgment appealed from is affirmed.

Affirmed.

---

[1] Not for publication.