212 So.2d 860 (1968)
COMMERCIAL CREDIT EQUIPMENT CORPORATION, Plaintiff-Appellee,
v.
LARRY PARROTT OF GUEYDAN, INC., Defendant-Appellant.
No. 2338.
Court of Appeal of Louisiana, Third Circuit.
May 3, 1968.
On Rehearing July 29, 1968.
*861 Edwards, Edwards & Broadhurst, by Nolan J. Edwards, Crowley, for defendant-appellant.
Piccione, Piccione & Wooten, by Peter C. Piccione, Lafayette, for plaintiff-appellee.
Before FRUGE, SAVOY and HOOD, JJ.
SAVOY, Judge.
This suit was instituted by plaintiff against defendant for a money judgment resulting from the failure of defendant to comply with the terms of a written agreement between the parties.
Plaintiff is in the business of lending money, and defendant is a farm implement dealer.
The parties entered into a written agreement dated March 16, 1959, labeled "Limited Liability Plan Agreement".
The essence of the agreement is that plaintiff agreed to buy from defendant certain unsecured and mortgage notes which defendant secured on credit sales to various vendees of farm equipment sold to them by defendant.
Defendant obligated itself in case of default by a vendee to repurchase the equipment so sold and which had to be repossessed by plaintiff. The repossession was limited to 10% of the equipment covered by notes purchased by plaintiff during any calendar year.
Under the above agreement plaintiff purchased two notes from defendant which were made payable to defendant by Clarence Bodin as maker. The notes were executed in connection with chattel mortgage executed by Bodin in favor of defendant, and represented the purchase price and carrying charges for equipment Bodin purchased from defendant. The notes were duly assigned by defendant to plaintiff.
Bodin failed to pay on either note as the installments matured. Plaintiff notified defendant of Bodin's default on said notes and demanded from defendant payment of the balance due on said notes.
*862 Defendant failed to comply with this request. Shortly thereafter the equipment sold to Bodin was repossessed by plaintiff. Bodin made a voluntary surrender of the equipment purchased from defendant.
Plaintiff made a demand on defendant to repurchase the equipment without success. Plaintiff received three bids on the equipment and again offered to sell the equipment to defendant in accordance with the highest bid. Defendant refused to repurchase. The equipment was sold to the highest private bidder, and this suit was instituted for the difference between the amount received from the sale of the equipment and the balance due on the notes.
After a trial on the merits, judgment was rendered in favor of plaintiff and against defendant as prayed for.
The pertinent provisions of the "Limited Liability Plan Agreement" read as follows:
"1. Without recourse on us, except as herein provided, you will purchase from time payment lien or title retention instruments, herein called `Instruments', which are acceptable to you, arising out of our retail sale and delivery of tractors, farm implements and similar machinery, herein called `Equipment', to purchasers for farm use.
"2. In consideration of our payment to you of the fees hereinafter provided, we will not be liable to you for the repurchase of any repossessed Equipment covered by Instruments accepted by you under this Limited Liability Plan during each calendar year which are in excess of Ten Per cent (10%) of the total number of Instruments purchased by you under this Plan in such calendar year, subject to a minimum of three (3). This Ten Per Cent (10%) limitation shall be computed as Ten Per Cent (10%) of the total number of Instruments purchased by you under this Plan during each such calendar year raised to the closest multiple of ten as indicated below:

 NUMBER OF INSTRUMENTS
 PURCHASED IN EACH CALENDAR
 YEAR REPURCHASE LIMIT OF LIBILITY
 --------------------------- ------------------------------
 Up to and including 30 Equipment on 3 Instruments
 From 31 to 40 " " 4 "
 " 41 to 50 " " 5 "
 " 51 to 60 " " 6 "
 etc. etc.

"We will repurchase Equipment repossessed by you which was covered by Instruments acceptable to you under this Plan when called upon by you to repurchase the same, until the above limit on our repurchase liability has been reached. Instruments purchased during each calendar year shall be considered in separate groups for the purpose of determining the limit on our repurchase liability for each such calendar year, and each repossession repurchased by us shall be counted as a repurchase for the year in which the related Instrument was purchased by you, regardless of the year in which the repossession or repurchase occurs. In counting the number of repossessions repurchased under this Plan, the repurchase of Equipment covered by two or more Instruments executed by the same purchaser shall be counted as one repurchase, if the Instruments were purchased during the same calendar year.
* * * * * *
"5. You shall make and receive all collections from purchasers on Instruments *863 and we will not accept payments thereon unless specifically requested to do so by purchasers as their agent. You may endorse or cause to be endorsed our name upon checks and other forms of payment received in respect to Instruments and otherwise sign and endorse our name on any Instrument or documents to carry out the intent of this agreement. You may, without notice to us or our consent, renew, rewrite, modify and extend the time of payment of Instruments, compromise or adjust claims on Instruments or Equipment covered thereby, or grant other indulgences, without affecting our liability hereunder. We will make suitable and proper entries on our books showing the absolute sale of Instruments to you. Your title to Instruments and the Equipment covered thereby shall at all times be superior to any right, title or lien which we may have, if any, thereto.
"6. With respect to Equipment which we are liable to repurchase under the provisions of this Plan, or with respect to Instruments purchased by you arising out of the sale of Equiopment for non-farm use, if you should repossess or come into possession of any such Equipment, we will repurchase the same, or such part thereof as is repossessed, immediately upon demand, in whatever condition and wherever located, and will pay you therefor, in cash, the total unpaid balance owing on the related Instrument, together with all out-of-pocket expenses incurred by you in connection therewith, but less a refund of charges computed in accordance with your standard refund schedule. If we do not repurchase such repossessed Equipment as herein provided, you may sell such repossessed Equipment at public or private sale, with or without notice to us, and we will pay you the difference between the net amount realized from such sale and the repurchase price provided for above. Until repurchase by us, you may store repossessed Equipment on our premises without cost, and our possession of such Equipment shall be merely as a bailee with the duty to safely store for you and redeliver such Equipment to you on demand.
"7. Any Instruments not acceptable to you under this Plan which you may purchase in reliance on our guaranty of such Instruments and any Instruments arising out of the sale of Equipment for non-farm use which you may purchase, shall not be counted in determining either our total Repurchase Limit of Liability, or as a repurchase should any of the same be repossessed by you and repurchased by us."
In his brief, counsel for defendant advanced several grounds which plaintiff should not recover against defendant in the instant case.
The first contention is that section 2 of the agreement is not applicable for the reason that defendant has repurchased in excess of 10% of the notes or instruments sold to plaintiff during the calendar year 1959. The record reflects that defendant sold to plaintiff sixty-seven notes during that year. Plaintiff was entitled to demand that defendant repurchase seven notes or the equipment representing said indebtedness on said notes in 1959. Defendant contends that it has repurchased nine notes, which is in excess of the 10% required under the agreement. These nine notes are listed as being signed by Jules Broussard, Lovelace J. Greene, Elry Griffin, Albert Guidry, Gilfred Hall, Percy Monceaux, Chester Morgan, Clifton Morgan and E. M. Stokes. However, in none of the above cases was repossession made of the farm equipment.
We agree with counsel for plaintiff that under the terms of the agreement, there were only two repossessions made during the calendar year 1959. Since defendant was required to repurchase seven pieces of equipment, the limitation on defendant's obligation to repurchase was never reached in 1959.
*864 The second and main contention advanced by counsel for defendant is that the judgment should be reversed, as the transaction in litigation violates LSA-R.S. 13:4106 et seq., commonly referred to as the Deficiency Judgment Act. This statute provides that a deficiency judgment is prohibited if the sale is made without benefit of appraisal. Also, that the provisions of the Act cannot be waived as a matter of public policy.
This argument is without merit. Under the provisions of section 6 of the Limited Liability Plan Agreement, defendant agreed that plaintiff could sell the repossessed property at private sale without notice to it. Plaintiff went out of its way to satisfy defendant. They notified it on three occasions and gave it the opportunity to repurchase the equipment or pay the balance due thereon.
The last contention advanced by defendant is that the notes given for the purchase price of the equipment were usurious for the reason that the carrying charges added to the purchase price far exceeded the rate of 8% per annum, which is the legal rate of interest which may be charged on any note in this State.
It is well settled in Louisiana that a seller and buyer can agree on credit price for an article in excess of cash price, although added price for credit sale over cash price exceeds the legal interest rate, so long as there is no fraud nor intention of defeating usury laws. See General Motors Acceptance Corporation v. Swain (La.App., 1 Cir., 1937), 176 So. 636; Motes v. Van Wagner (La.App., 4 Cir., 1966), 188 So.2d 704; and Mills v. Crocker, 9 La.Ann. 334 (Sup.Ct.1854).
For the reasons assigned the judgment of the district court is affirmed at appellant's costs.
Affirmed.

On Rehearing
En Banc.
SAVOY, Judge.
Rehearing was granted in the instant case for the reason that some members of this Court were of the opinion that the Limited Liability Plan Agreement as set forth in the original opinion herein violated LSA-R.S. 13:4106 et seq., commonly referred to as the Deficiency Judgment Act, for the reason that the property repossessed by plaintiff was sold at private sale without benefit of appraisement.
After due consideration of the matter we hereby reinstate our original decree.
In the case of Southland Investment Co. v. Motor Sales Co., 198 La. 1028, 5 So.2d 324, the Supreme Court of this State held that the deficiency judgment statute was enacted for the benefit and protection of the mortgage debtor and nowhere does the statute refer to or mention public policy towards or relief for parties secondarily or otherwise obligated for the indebtedness, such as an endorser. The Court also held that the provisions of the statute pronouncing the principle of the public policy were inapplicable to the case of an endorser whose rights and remedies are prescribed and governed by other applicable laws, particularly the articles of the Code pertaining to suretyship.
The Southland Investment Company case, supra, was cited with approval in Farmerville Bank v. Scheen, 76 So.2d 581 (La.App. 2 Cir. 1954), and in Gumina v. Dupas, 178 So.2d 291 (La.App. 4 Cir. 1965).
For the reasons set forth in the above cited cases, it is our opinion that the Deficiency Judgment Act does not apply to the instant case.
For the reasons assigned, the judgment and decree originally rendered herein is approved, reinstated, and made the final judgment of this Court.