**BOWL-OPP, INC., Plaintiff,**

v.

**Clive M. LARSON and Homer H. Horton, Jr., Defendants.**

**Civ. A. No. 70-1385.**

United States District Court,
E. D. Louisiana,
New Orleans Division.

Nov. 15, 1971.

Jerry A. Brown, Monroe & Lemann, New Orleans, La., for plaintiff.

Charles E. McHale, Jr., New Orleans, La., for defendants.

CASSIBRY, District Judge:

This is an action brought by the plaintiff, Bowl-Opp, Inc., a Delaware corporation qualified to do business in Louisiana, based on diversity of citizenship with the amount in dispute being in excess of $10,000.00, exclusive of interests and costs. The plaintiff, assignee and holder of a bearer note, seeks to recover a sum of money allegedly owed by the defendants, Larson and Horton, citizens of Louisiana and endorsers on the note,

as a deficiency that resulted when the property mortgaged to secure the note was sold at a public sale pursuant to a federal court order for less than the amount outstanding on the note at that time. The matter was tried to the Court on April 23, 1971, and taken under advisement. Upon consideration of the testimony adduced at the trial, the stipulations made by counsel for the respective parties, and the depositions and exhibits received into evidence at the trial, the court now makes the following findings of fact and conclusions of law.

## FINDINGS OF FACT

### 1.

The defendants, Clive M. Larson and Homer H. Horton, Jr.,[1] endorsed a negotiable promissory bearer note, dated December 8, 1961, in the principal amount of $80,000.00, executed by Tangi Bowling Investment Corporation as maker, payable to the order of bearer in monthly installments of $720.00 each, commencing January 1, 1962, and payable in a like amount on the first day of each month thereafter until December 1, 1976, with the balance becoming due and payable then.

### 2.

The terms of the note provided for the following:

(a) Interest at the rate of seven (7%) percent per annum from date until paid.

(b) Each endorser of the note (two of whom are defendants herein) bound himself individually and in solido to the same extent as the maker thereof; and waived presentment, demand, notice of non-payment and protest, and all pleas of discussion and division. The endorsers also consented that the time of payment could be extended any number of times without notice or previous consent.

(c) Attorney's fees of ten (10%) percent of the total amount involved in any default on the note, with a minimum fee of not less than $100.00.

(d) The note was paraphed for identification with, and the indebtedness was further secured by, an act of mortgage, on certain movable and immovable property in the Parish of Tangipohoa, Louisiana, passed before Leonard H. Rosenson, Notary Public, Orleans Parish, on December 8, 1961.

(e) If any installment of principal and interest or any part thereof should remain unpaid at the date when such installment was due, then, at the option of the holders of the note the note could be matured at once and cause the entire balance of principal, interest and attorney's fees and all other obligations to become due, without the necessity of putting the maker in default.

### 3.

A default on the terms of the note occurred on June 1, 1966, when the regular monthly installment was not paid. No monthly installments have been paid since that date; and the plaintiff, as holder of the note, exercised its option to declare the entire unpaid balance of the note, including principal, interest and attorney's fees, due and payable.

### 4.

On the date of the default, the unpaid balance on the principal was $63,974.58. Plaintiff proceeded in state court *via executiva* and filed suit on October 28, 1966, to foreclose on the note for the above amount of money plus seven (7%) percent interest thereon from June 1, 1966, until paid, together with ten (10%) percent attorney's fees on the total amount of principal and interest.

---

1. The promissory note was also endorsed by Sam J. Recile, Frank Spalitta and Emile G. Coci, who are not parties to this suit.

**5.**

The plaintiff was not able to foreclose against the mortgaged property due to the fact that Southern Land Title Corporation, successor to Tangi Bowling Investment Corporation, and owner of the mortgaged property, was a debtor corporation in a proceeding in this court entitled "In the Matter of: Southern Land Title Corporation", No. 66–1095, and The Honorable Lansing L. Mitchell enjoined the foreclosure sale in the state court previously filed by Bowl-Opp by a stay order issued on December 8, 1966. The foreclosure in the state court was subsequently enjoined by a stay order issued by The Honorable Frederick J. R. Heebe of this court on April 27, 1967, in the case entitled "In the Matter of: Southern Land Title Corporation, Debtor", No. 67–135.

**6.**

The plaintiff filed a petition in November of 1968, "In the Matter of: Southern Land Title Corporation, Debtor", No. 67–135, requesting that the trustee disclaim and abandon the property securing the mortgaged note. In his answer the trustee refused to disclaim the property but agreed to its being sold at public auction provided the plaintiff would release Southern Land Title Corporation and all its subsidiary corporations from liability for any deficiency on the mortgaged note bearing against the property sought to be disclaimed.

**7.**

By judgment dated January 21, 1969, "In the Matter of: Southern Land Title Corporation, Debtor", No. 67–135, after the plaintiff withdrew its petition for disclaimer, it was ordered that the property be sold at public auction. The judgment also noted:

"[T]he stipulation of Bowl-Opp, Inc., * * * to waive liability for any deficiency on the mortgage indebtedness due them by Southern Land Title Corporation or any of its corporate subsidiaries * * *"

Although the judgment of the court is devoid of any reservations by Bowl-Opp, Inc., against any of the individual makers or endorsers, the true intentions of Bowl-Opp, Inc., is reflected in the following discussion at a hearing before The Honorable Frederick J. R. Heebe on January 16, 1969, among Mr. Little, the attorney for the Trustee, Mr. Matheny, the attorney for Bowl-Opp, Inc., and Judge Heebe.

"MR. MATHENY:

At this time we would stipulate on behalf of movers (Bowl-Opp, Inc.) that movers would release the makers of the note and all subsidiary corporations of Southern Land Title Corporation from liability for any deficiency on the mortgage note bearing against the property sought to be disclaimed, *but reserving all other rights that we may have.*

THE COURT:

In other words, the release of liability is to apply as to Southern Land Title Company and all of its subsidiaries?

MR. LITTLE:

*The release of liability specifically is not to apply to individual makers or endorsers, your Honor.*

THE COURT:

*Does not in any way apply to individual endorsers?*

MR. MATHENY:

*That is correct.*

THE COURT:

But only to corporate endorsers' liability?

MR. LITTLE:

That is right."   (Emphasis added)

**8.**

The sale of the property was duly advertised on May 6, May 20, and June 2, 1969, and the property was sold, without appraisal, as scheduled and as advertised on June 5, 1969.

At the sale, Bowl-Opp, Inc., and American Machine & Foundry Company, bidding in the name of Bowl-Opp, Inc., were

the last and highest bidders for the property known as Tangi Bowling Lanes, Inc., designated as Tracts I–A and II–A, and all movables included therein, for a price of $101,000.00. After proper deductions were made, this sale price left a deficiency in excess of $27,000.00.

## CONCLUSIONS OF LAW

### 1.

This court has jurisdiction by virtue of diversity of citizenship of the parties and the amount in controversy.[2]

### 2.

The judgment ordering the property to be sold at public auction rendered in this court in the proceeding entitled "In the Matter of: Southern Land Title Corporation, Debtor", No. 67–135, did not operate as a discharge of the defendants from liability as endorsers. The plaintiff did reserve its rights against the individual endorsers and it had no intention to discharge them when it discharged Southern Land Title Corporation and any of its corporate subsidiaries from liability.

Article 2203 of the Louisiana Civil Code provides:

"The remission or conventional discharge in favor of one of the codebtors in solido, discharges all others, *unless*

*the creditor has expressly reserved his right against the latter.*" (Emphasis added) [3]

This principle of law is also firmly established in Louisiana jurisprudence:

"The right of a holder of a negotiable instrument to release one of the persons thereon solidarily bound, without thereby impairing his rights against others likewise bound is definitely recognized and provided for in various articles of the Louisiana Civil Code; but to preserve his right against the obligors not released, express reservation of rights as against them must be made at the time release is given." [4]

Although there was no express reservation in the judgment of January 21, 1969 allowing the sale,[5] the intention to reserve the rights against the individual endorser was sufficiently expressed by Bowl-Opp, Inc., in the proceedings to satisfy Article 2203.

### 3.

The defendants deny liability under the Louisiana Deficiency Judgment Act'[6] inasmuch as the mortgaged property was sold without appraisal.

The plaintiff argues that the Deficiency Judgment Act does not apply in this case for three reasons. First, the plaintiff alleges that the Deficiency Judgment Act does not apply to sales

---

2. 28 U.S.C. § 1332.

3. La.Civ.Code, art. 2203 (1870).

4. S. P. Weaver Lumber & Supply Co. v. Ashford, 12 So.2d 834, 837 (La.App. 1943). See also Harvey v. Travelers Ins. Co., 163 So.2d 915 (La.App.1964) ; Reiley v. Atlas Const. Co., 146 So.2d 211 (La.App.1962).

5. In Meadow Brook Nat. Bank v. Massengill, 427 F.2d 1055, 1057 (5th Cir. 1970), the mortgagee also petitioned the district court to abandon the mortgaged property. In the judgment allowing the abandonment, the plaintiff-creditor expressly reserved its rights against the endorsers or guarantors bound in solido with the principal debtor:

"[T]hat the debtor corporation is hereby released and forever discharged from any and all liability of every kind and nature whatsoever to the petitioning creditor on account of the loans secured by the mortgages on these two properties, *fully reserving, however, to the petitioning creditor any and all right which it has had, now has or might have against any other person or persons, other than the debtor corporation or its subsidiaries, who are or might be liable or indebted unto it on the notes evidencing the debts secured by the mortgages on these two properties.*" (Emphasis added)

6. La.R.S.–13 :4106, as amended, Act 1952, No. 20 § 1; Acts 1960, No. 32, § 1.

under Bankruptcy laws because the requirement of appraisal in public sales under Louisiana law does not obtain in federal law. Second, the plaintiff alleges that the Act does not apply because the plaintiff did not take advantage of a waiver of appraisement. Third, the plaintiff claims that the Act does not apply to the endorsers in this case.

The Louisiana Deficiency Judgment Act provides in part:

"If a mortgagee or other creditor takes advantage of a waiver of appraisement of his property, movable, immovable, or both, by a debtor, and the proceeds of the judicial sale thereof are insufficient to satisfy the debt for which the property was sold, the debt nevertheless shall stand fully satisfied and discharged insofar as it constitutes a personal obligation of the debtor. The mortgagee or other creditor shall not have a right thereafter to proceed against the debtor or any of his other property for such deficiency * * *."

■ In support of its first argument, plaintiff contends that the Louisiana Deficiency Judgment Act does not apply because, contrary to the requirement of appraisal in public sales under Louisiana law in order to qualify for a deficiency judgment, any public sale ordered by a federal court may be made without appraisal and cites Pan American Petro-

leum Co. v. Chase National Bank, 83 F.2d 447 (9th Cir. 1936). That case, however, holds that an appraisal is not a prerequisite to a foreclosure by public sale under federal law, but that such appraisal is necessary only in private foreclosure sales. While it is true that any public sale ordered by a federal court may be made without appraisal, 28 U.S.C. § 2001 does not state that if such a public sale is made without appraisal the selling-creditor is entitled to a deficiency judgment. That statute, as pointed out in Pan American Petroleum Co. v. Chase National Bank, *supra,* merely allows a sale to be made publicly without appraisal as does the law in Louisiana, La.Code Civ.P. art. 2723 (1960). However, since the federal statute does not address itself to deficiency judgments, and because of the strong public policy expressed in the Louisiana Deficiency Judgment Act,[7] it is the court's conclusion that the federal statute, 28 U.S.C. § 2001, does not prevent the application of the Louisiana Deficiency Judgment Act.

**4.**

■ Plaintiff's second argument is that the Louisiana Deficiency Judgment Act does not apply because it did not take advantage of a waiver of appraisement inasmuch as it did not provoke the sale of the property. This court

---

7. See La.Rev.Stat. 13:4107 (1950), which provides:

"R.S. 13:4106 (La. Deficiency Judgment Act) declares a public policy and the provisions thereof can not, and shall not be waived by a debtor, but it shall only apply to mortgages, contracts, debts or other obligations made, or arising on or after August 1, 1934."

See Universal C.I.T. Credit Corporation v. Hulett, 151 So.2d 705 (La.App.1963), where the court states

"[U]nder the stringent public policy provisions of the Deficiency Judgment Act as interpreted, a mortgage creditor is absolutely barred from a deficiency judgment where he provokes a sale,

judicial or private, without the benefit of appraisement * * *".

*Id.* at 707. *Accord,* Atlas Finance Corporation v. Whitehead, 99 So.2d 481 (La. App.1958), where the court held:

"It is almost too well settled to need citation in support thereof that by virtue of the public policy provisions of the Deficiency Judgment Act a mortgage creditor is barred from obtaining a deficiency judgment where he provokes a sale, judicial or private, without benefit of appraisement, notwithstanding the sale was effected pursuant to a stipulation or an existing agreement between the mortgagor and the mortgagee."

*Id.* at 482.

cannot agree with plaintiff's contention. The record clearly shows that it was the plaintiff who petitioned the United States District Court to disclaim the property from the reorganization proceedings of Southern Land. It was also the plaintiff who entered into a consent stipulation with the Trustee of Southern Land to allow the property to be sold under terms and conditions to be fixed by the Special Master. It was also the plaintiff who entered into a consent stipulation which resulted in a judgment releasing Southern Land and any of its corporate subsidiaries from liability for this debt. To say now that it did not provoke the sale of the property is, in the court's opinion, inconsistent with its efforts to have the property sold. Therefore since it is the opinion of the court that the plaintiff did in fact provoke the sale, the Louisiana Deficiency Act does apply as evidenced by the holding in Universal C.I.T. Credit Corp. v. Hulett, 151 So.2d 705, 707 (La.App. 1963):

"[U]nder the stringent public policy provisions of the Deficiency Judgment Act as interpreted, *a mortgage creditor is absolutely barred from a deficiency judgment where he provokes a sale, judicial or private, without the benefit of appraisement * * *".* (Emphasis added)

The court is of the further opinion that the emphasis of the strong public policy in the Louisiana Deficiency Judgment Act is on appraisal of the property before sale or lack of it, rather than on the judgment creditor's taking advantage of a waiver of appraisement. The expression of the public policy in art. 2771, Louisiana Code of Civil Procedure clearly delineates this emphasis.

"The creditor may obtain a judgment against the debtor for any deficiency due on the debt after the distribution of the proceeds of the judicial sale only if the property has been sold under the executory proceeding after appraisal in accordance with the provisions of Article 2723."

5.

Plaintiff's third argument is that the Deficiency Judgment Act does not apply to the defendant-endorsers in this case because the language of the Act makes no reference to endorsers being released by a sale without appraisal, and cites Southland Inv. Co. v. Motor Sales Co., 198 La. 1028, 5 So.2d 324 (1941); Commercial Credit Eq. Corp. v. Larry Parrott of Gueydan, Inc., 212 So.2d 860 (La.App.1968); Hammond Finance Co. v. Carter, 83 So.2d 682 (La.App.1955); and Farmerville Bank v. Scheen, 76 So.2d 581 (La.App. 1955) as supporting its position. In all of these cases the endorser was held liable even though the property was sold without an appraisal. Each of these cases involved relationships between an automobile or other dealer, a purchaser, and a finance company. In each case the dealer became the endorser who was ultimately sued by the finance company. The dealer-endorser defendant would sell a chattel such as an automobile to a purchaser who would become the principal maker on a note secured by a chattel mortgage on the equipment. The dealer would then endorse the note over to the plaintiff finance company with an ancillary agreement with the finance company that the finance company could repossess the mortgaged property and sell it at a private sale if the maker defaulted. This occurred in all four cases cited by the plaintiff. In all of the above opinions the courts in Louisiana held that the equipment was repossessed and sold at a private sale for the best price available with the consent and acquiescence of the defendant-endorser and that the defendant-endorser was therefore precluded from setting up the defense of "lack of appraisal" under the Deficiency Judgment Act.

In the present case the relationships involved are not the same as those that existed in the cases cited by the plaintiff, and no ancillary agreement between endorsers and creditor existed. In C.I.T. Corporation v. Rosenstock, 205 So.2d 81 (La.App.1967), and Simmons v. Clark,

64 So.2d 520 (La.App.1953), the endorser was not a party to any agreement between the maker primarily liable and the holder of the note relative to repossession or sale of the mortgaged property, thus the court in these two cases held that the endorser was freed of any liability by the sale of the property without being apprised first. Note the language of the appellate court in Simmons v. Clark, *supra,* wherein the court held that the endorser was entitled to urge the same defense under the Deficiency Judgment Act as the principal debtor:

> "Petitioner claims that, in the instant case, there is no violation of public policy as is stated in LSA–R.S. 13:-4107. He bases his contention on the fact that petitioner is proceeding against the surety, not the debtor. He admits that he has no right of action against [the debtor]. We, however, are unable to agree with the contention that he is not attempting to violate public policy. The law clearly states that it is against public policy to attempt to secure a deficiency judgment when the judicial sale, made without the benefit of appraisement, failed to bring in sufficient proceeds to discharge the indebtedness."

The plaintiff further contends that the defendants are estopped to complain about the lack of appraisal because they had ample opportunity to object to the sale without appraisal. The evidence fails to support this contention.

Considering the facts as found and the applicable law, it is the court's conclusion that the Louisiana Deficiency Judgment Act does apply, and because the property was sold without appraisal, the plaintiff, Bowl-Opp, Inc., is barred from seeking a deficiency judgment against the defendants.

Let judgment be entered dismissing plaintiff's suit against the defendants at plaintiff's cost.