321 So.2d 338 (1975)
EXCHANGE NATIONAL BANK OF CHICAGO et al.
v.
Frank SPALITTA et al.
No. 55012.
Supreme Court of Louisiana.
March 31, 1975.
On Rehearing November 3, 1975.
*339 Leo S. Roos, Roos & Roos, New Orleans, for plaintiffs-applicants.
Joseph P. Henican, III, Carl W. Cleveland, C. Ellis Henican, Jr., Henican, James & Cleveland, New Orleans, for defendants-respondents.
BARHAM, Justice.
This suit was filed by Exchange National Bank in an attempt to collect money owed to it by Place Vendome Corporation from the latter's accommodation guarantors, C. Ellis Henican, Philip E. James, and Frank Spalitta. Place Vendome Corporation is a subsidiary of Southern Land Title Corporation, both of which are presently in bankruptcy proceedings under Chapter X of the Bankruptcy Act, the chapter providing for corporate reorganization. 11 U.S.C. § 501 et seq.
The three defendants signed a continuing guaranty in solido for all sums advanced to Place Vendome Corporation by Exchange National Bank and National American Bank of New Orleans, up to $1,824,234.00. Following the execution of a collateral mortgage on several French Quarter properties owned by Place Vendome, Exchange National Bank advanced several large sums of money to Place Vendome for construction purposes.
In June, 1967, Place Vendome and Southern Land Title Corporation invoked bankruptcy proceedings by a petition for corporate reorganization entitled In the Matter of Southern Land Title Corporation, Debtor, No. 67-135 on the docket of the United States District Court for the Eastern District of Louisiana. During the corporate reorganization proceedings, Exchange National Bank petitioned for a sale of the mortgaged properties. Pursuant to its authority under Chapter X, the court ordered the trustee to sell the properties at a public auction where Exchange National Bank purchased them, applying the price to the amount allegedly due it.
During the pendency of the reorganization proceedings, but before the sale of the property, Exchange National Bank filed this suit in state court on its collateral mortgage note. (National American Bank, an original plaintiff, dismissed its suit with prejudice.) Following the sale of the *340 property, Exchange National Bank amended its petition in order to include the sale, seeking only the balance due on the note after the sale of the property. The defendants filed an exception of no cause of action on the ground that a deficiency judgment was barred by failure to comply with La.R.S. 13:4106, 4107 because the property was not sold under executory proceedings with notice of seizure and proper appraisal and because compliance with the Act was not alleged in the petition, plaintiffs responded that compliance was not necessary because the Louisiana Deficiency Judgment Act does not apply to sales ordered in corporate reorganization proceedings under Chapter X.
The trial court sustained the exception of no cause of action, holding that the bank had lost its right to a deficiency judgment against the guarantors by its failure to follow the requirements of La.R.S. 13:4106 et seq. The court of appeal affirmed. 295 So.2d 18 (La.App. 4th Cir. 1974). We granted certiorari to review that decision. 299 So.2d 360 (La.1974). We reverse the judgment of the court of appeal and set aside the ruling of the trial court sustaining the exception of no cause of action.
Although we are in agreement with the finding in the trial court that the requirements of the Deficiency Judgment Act were not complied with, it is our opinion that it is not necessary to address ourselves to that issue because of our threshold determination that the Louisiana Deficiency Judgment Act is not applicable to sales under Chapter X of the Bankruptcy Act.
From the record, it appears that Place Vendome Corporation filed for voluntary reorganization under Chapter X on June 19, 1967, following the initiation of reorganization proceedings by its parent corporation, Southern Land Title Corporation. On June 21, 1967, the federal district court approved the petition and appointed a trustee. At this time, title to all of the debtor's property passed to the trustee under 11 U.S.C. § 586, retroactive to the date of the filing of the petition. See In Re Susquehanna Chemical Corp., 81 F.Supp. 1 (W.D.Pa.1948), aff'd, 174 F.2d 783 (3d Cir. 1949). Thus, Place Vendome, by filing the petition, voluntarily divested itself of all property, title to which passed to the trustee who represents the general creditors and who was appointed with the approval of the federal district judge. 11 U.S.C. § 72.
If the proceeding had been one in straight bankruptcy, it would have been the duty of the trustee to liquidate the estate in a manner which would produce the greatest return for the general creditors. In straight bankruptcy, all sales must comply with 11 U.S.C. § 110(f), which requires the appointment of appraisers and a price not less than 75% of the appraised value. However, in corporate reorganization under Chapter X, the object is reorganization and recapitalization rather than liquidation, and in accordance therewith, the trustee is vested with the extraordinary power to sell or lease property in any manner which improves the strength of the debtor corporation and protects the creditors. This grant of authority is conferred by 11 U.S.C. § 516, which provides:
"Upon the approval of a petition, the judge may, in addition to the jurisdiction, powers, and duties in this chapter conferred and imposed upon him and the court
"* * *
"(3) authorize a receiver or a trustee or a debtor in possession, upon such notice as the judge may prescribe and upon cause shown, to lease or sell any property of the debtor, whether real or personal, upon such terms and conditions as the judge may approve; * * *."
The only limit upon this power is the sound discretion of the judge; 11 U.S.C. § 110(f) is specifically made inapplicable by *341 the express wording of 11 U.S.C. § 502. See also Judge Augustus Hand's statement in In Re Loewer's Gambrinus Brewery Co., 141 F.2d 747, 750 (2d Cir. 1944):
"* * * 11 U.S.C.A. § 502, expressly provides that an appraisal shall not be necessary in a Chapter X proceeding unless an order shall be entered directing that bankruptcy be proceeded with pursuant to Chapters I to VII inclusive, 11 U.S.C.A. §§ 1-112. In other words, Section 102 exempts sales in Chapter X proceedings from the necessity of appraisal which is required in straight bankruptcy."
The difference in requirements flows from the difference in objectives in straight bankruptcy as opposed to reorganization proceedings. These differences have been cogently explained in In re Danra Corporation, 400 F.2d 833, 836 (3d Cir. 1968), as follows:
"After a petition has been approved, the District Court may exercise its discretion in ordering the sale of all or of a portion of the assets of the debtor. There is no requirement that a plan for reorganization must be submitted, nor even that the sale be in aid of reorganization, or that it await a liquidation in straight bankruptcy. Furthermore, Section 102 of the Act (11 U.S.C.A. § 502) renders an appraisal of the assets in Chapter X proceedings unnecessary unless the Court has ordered the instigation of bankruptcy proceedings. [citations omitted].
"* * * It must be noted that Section 116 authorizes such sales to be made within the sound discretion of the Court `upon cause shown'. The statute makes no reference to the necessity or an impending emergency. Furthermore, the weight of authority in the various circuits is that Section 116 sales are proper where there is justifiable cause present, and where the sale is in the best interest of the debtor and the majority of the creditors. [citations omitted]."
In addition to the discretionary power vested in the trial judge regarding sales of a debtor's property under § 516, we note the well-established exclusive nature of the jurisdiction of the Bankruptcy Court over the debtor and its property under the provisions of 11 U.S.C. § 511:
"Where not inconsistent with the provisions of this chapter, the court in which a petition is filed shall, for the purposes of this chapter, have exclusive jurisdiction of the debtor and its property, wherever located."
The clause "wherever located" indicates the need, particularly in reorganization proceedings, for uniformity among the jurisdictions, as well as the need for exclusive jurisdiction in a single court, because of the fact that a bankrupt debtor corporation often owns property in several states. The essential purpose of the jurisdictional statute, as described in Collier on Bankruptcy, is:
"* * * to render the authority and control of the reorganization tribunal paramount and all-embracing to the extent required to achieve the ends contemplated by Chapter X; and to exclude any interference by the acts of others or by proceedings in other courts where such activities or proceedings in other courts tend to hinder the progress of reorganization." 6 Collier on Bankruptcy 424, ¶ 3.03 (14th ed. 1972). (Emphasis here and elsewhere supplied.)
There exists only one federal case resolving the issue of the applicability of the Deficiency Judgment Act to sales under Chapter X, i. e., Bowl-Opp, Inc. v. Larson, 334 F.Supp. 222 (E.D.La.1971). That was a diversity suit in which the federal district court judge was bound to apply Louisiana law to the situation before him. This issue being one of first impression *342 in Louisiana courts in the instant case, the judge was constrained to apply what, in his opinion, Louisiana courts would find the law to be if given the same facts. The holding in Bowl-Opp was that the Louisiana Deficiency Judgment Act did apply to Chapter X sales, but that it had not been complied with since the property had been sold without appraisal. In the instant case, Louisiana courts are confronted with the issue for the first time, and, as we are not bound by the federal judge's interpretation of our law, we hold that the Act does not apply to Chapter X sales. It is our opinion that J. Ray McDermott and Co. v. Vessel Morning Star, 5 Cir., 431 F.2d 714, rehearing en banc, 457 F.2d 815 (5th Cir. 1972), is the more preferable federal interpretation of the applicability of the Louisiana Deficiency Judgment Act to federal statutes which have been enacted in the interest of uniformity.
McDermott involved fishing vessels which had been foreclosed upon without appraisal; the shipbuilder attempted to enforce a guaranty against the defendant endorsers in spite of the lack of appraisal. Defendants sought protection under the Louisiana Deficiency Judgment Act. On first hearing, the three-judge panel held the Louisiana act applicable, in spite of the pre-emption of the area by the National Maritime Act. However, on rehearing, the Fifth Circuit en banc overruled their decision, holding the Louisiana act inapplicable. The reasoning of the court was that it was clear that Congress intended that the ready availability of credit to support interstate commerce should not be impeded by state limitations, and that the National Maritime Act should therefore supercede completely all aspects of state law at variance with that purpose. The court stated:
"* * * `to engraft the various nuances of state law onto federal legislation would introduce an undesirable lack of uniformity in the interpretation of Congressional enactments' and would impede the harmony and uniformity sought by the Act. * * *"
In our opinion, the situation faced by the Fifth Circuit in McDermott is analogous to the one before us in the instant case. To impose the Louisiana requirements of executory process on sales made pursuant to court order under Chapter X and to render such sales subject to deficiency judgments in state courts while corporate reorganization is still pending in federal court would also "introduce an undesirable lack of uniformity in the interpretation of Congressional enactments" and would impede the uniformity sought by Congress in passing the Federal Bankruptcy Act.
Moreover, resort to the Louisiana Deficiency Judgment Act is not necessary to fill any gaps in the federal bankruptcy law. Although Chapter X sales are not made pursuant to the specific appraisal and notice requirements of the Deficiency Judgment Act, there nevertheless exist procedural safeguards for the protection of both debtors and creditors. For example, once a bankruptcy petition is approved, the debtor no longer owns the property: title vests immediately in the trustee who, as representative of the general creditors, seeks to achieve the highest price for the secured creditors in order to reduce the deficiency against the debtor, who will be protected by the discharge. Any deficiency will be claimed by the secured creditor in the status as general creditor, with a consequent reduction in the assets for distribution.
Under Chapter X, the trustee petitions, in his capacity as owner, for permission from the court to sell property. His function, in the interests of both debtor and creditors, is to reorganize the bankrupt corporate debtor, eliminating as much of the debt as possible by sale of property as he deems it necessary. It is within his discretion to retain the property and include the secured creditor in his plan of reorganization if that option appears to be preferable upon consideration of the particular circumstances and the status of the corporate bankrupt which he is reorganizing.
*343 All petitions for sales are subject to the approval of the federal district court judge, and the opportunity to contest a petition for a sale is afforded interested parties, as was done in the instant case.
Thus, application of the Deficiency Judgment Act is not necessary in terms of safeguarding the rights of debtors and creditors. Moreover, such an application would frustrate the intent which Congress evidenced by enacting the bankruptcy act. As noted supra, Congress specifically exempted Chapter X sales from the requirement of appraisal found in other bankruptcy court sales in order to better effectuate the ultimate goal of corporate reorganization. Exclusive jurisdiction was vested in the court in which the petition for reorganization had been filed, in order that no proceeding in another court could impede the progress being made toward reorganization in the court of original jurisdiction. In fact, the goal of reorganization of a corporation to meet financial obligations gradually is at variance with the concept of the deficiency judgment, which results in the release of the debtor. For these reasons, we must hold the Louisiana Deficiency Judgment Act inapplicable to sales made pursuant to Chapter X of the federal Bankruptcy Act.
We reverse the decision of the court of appeal and set aside the ruling of the trial court sustaining the exception of no cause of action. We order the case remanded to the trial court for further proceedings. Casting of costs is reserved.
SANDERS, C. J., dissents with written reasons.
SUMMERS and MARCUS, JJ., dissent for reasons assigned by SANDERS, C. J.
SANDERS, Chief Justice (dissenting).
In the present case, both the district court and Court of Appeal held that the deficiency judgment was barred by the failure to comply with the appraisal safeguards of LSA-R.S. 13:4106-4107, the Louisiana Deficiency Judgment Act. The majority of this Court now holds that the Louisiana Deficiency Judgment Act does not apply following a sale on petition of the creditor under Chapter X of the Federal Bankruptcy Act. 11 U.S.C. § 501 et seq. I disagree.
The Louisiana Deficiency Judgment Act provides:
LSA-R.S. 13:4106:
"If a mortgagee or other creditor takes advantage of a waiver of appraisement of his property, movable, immovable, or both, by a debtor, and the proceeds of the judicial sale thereof are insufficient to satisfy the debt for which the property was sold, the debt nevertheless shall stand fully satisfied and discharged insofar as it constitutes a personal obligation of the debtor. The mortgagee or other creditor shall not have a right thereafter to proceed against the debtor or any of his other property for such deficiency, except as provided in the next paragraph.
"If a mortgage or pledge affects two or more properties, movable, immovable, or both, the judicial sale of any property so affected without appraisement shall not prevent the enforcement of the mortgage or pledge in rem against any other property affected thereby."
LSA-R.S. 13:4107:
"R.S. 13:4106 declares a public policy and the provisions thereof can not, and shall not be waived by a debtor, but it shall only apply to mortgages, contracts, debts or other obligations made, or arising on or after August 1, 1934."
The statute expresses the strong public policy of the state. It is well settled that the protection of the statute extends to any type of sale, judicial or private, whereby encumbered property is sold without proper appraisement. See, e. g., Carr v. Lattier, *344 La.App., 188 So.2d 645 (1966); Universal C.I.T. Corporation v. Hulett, La.App., 151 So.2d 705 (1963); David Investment Co. v. Wright, La.App., 89 So.2d 442 (1956); Futch v. Gregory, La.App., 40 So.2d 830 (1949); Home Finance Service v. Walmsley, La.App., 176 So. 415 (1937).
In an early case applying the Louisiana Deficiency Judgment Act to a private sale, Home Finance Service v. Walmsley, supra, the Court of Appeal stated:
"It is clear from the foregoing that it has been declared to be against the public policy of this state for any holder of a mortgage to provoke a judicial sale without first having the encumbered property appraised, and that, if such mortgage holder does foreclose without such appraisal, he is prohibited from thereafter proceeding against the mortgagor for any deficiency remaining on the debt.
* * * * * *
". . . While the statute under consideration refers particularly to judicial sales without appraisement, we are of the opinion that the statement of the public policy therein is sufficiently broad to disclose that it was the intention of the lawmakers to place a stamp of disapproval on any practice whereby encumbered property is sold without judicial appraisement, and to sanction the type of agreement, such as the one before us, would be to allow the employment of a device calculated to defeat the underlying purposes which prompted the passage of the law."
The federal courts have soundly held that a sale in a bankruptcy proceeding does not immunize the debt from a state deficiency judgment act. Meadow Brook National Bank v. Massengill, 427 F.2d 1055 (5th Cir. 1970); In re Wilton Maxfield Management Co., 117 F.2d 913 (9th Cir. 1941); Bowl-Opp, Inc. v. Larson, 334 F. Supp. 222 (E.D.La.1971).
In Bowl-Opp, Inc. v. Larson, supra, a diversity suit in the United States District Court for the Eastern District of Louisiana, the plaintiff sought to recover from the endorsers of a promissory note a deficiency remaining after the sale of the mortgaged property under an order of the bankruptcy court. In rendering judgment for the endorsers, the court held that the bankruptcy sale did not prevent the application of the Louisiana Deficiency Judgment Act.
In Wilton Maxfield Management Co. v. Crawford, supra, the United States Court of Appeal held that when there was a failure to comply with the California statutes relating to a deficiency judgment in a bankruptcy sale of mortgaged property, the creditor would not be entitled to a deficiency judgment.
In such cases, the state statute regulates the debtor-creditor relationship subsequent to the sale, not the bankruptcy proceeding.
The majority relies upon J. Ray McDermott and Co., Inc. v. Vessel Morning Star, 457 F.2d 815 (5th Cir. 1972). That case, however, is inapposite. It involved a creditor's suit for a deficiency judgment under the Ship Mortgage Act, a federal statute designed to encourage the development of the Merchant Marine. The creditor's security rights thus were created under the federal statute, rather than under state law. The Fifth Circuit Court of Appeal recognized this distinction, when it stated:
"* * * `to engraft the various nuances of state law onto federal legislation would introduce an undesirable lack of uniformity in the interpretation of Congressional enactments' and would impede the harmony and uniformity sought by the Act. * * *" (Italics mine.)
In my opinion, the Louisiana Deficiency Judgment Act is applicable. Hence, under the Act, the debt "stand[s] fully satisfied and discharged insofar as it constitutes a personal obligation of the debtor." See LSA-R.S. 13:4106.
*345 In the framework of the Louisiana Civil Code, suretyship is an accessory contract. The Code is clear that when the debt has been discharged as to the principal debtor, the sureties have a real or non-personal defense which they may interpose. LSA-C.C. Arts. 3036, 3060, 3061, 3299; Simmons v. Clark, La.App., 64 So.2d 520 (1953); Brewer v. Foshee, 189 La. 220, 179 So. 87 (1938); Dennis v. Graham, 159 La. 24, 105 So. 87 (1925); Planiol, Civil Law Treatise, Vol. 2, Part 2, No. 2376, p. 352 (La. State Law Inst. trans. 1939); 1 Pothier, Obligations, trans. by William David Evans, § 380, p. 307 (1853); 1 Domat, The Civil Law in Its Natural Order, Part 1, Book III, Title IV, Art. VIII, p. 62 (William Strahan trans., Cushing ed. 1861).
The Bank, however, classifies the guarantors as co-debtors in solido, rather than sureties. Assuming its classification to be correct, the Louisiana Civil Code treats co-debtors in solido exactly as it treats sureties in the present situation. Article 2098 provides:
"A codebtor in solido, being sued by the creditor, may plead all the exceptions resulting from the nature of the obligation, and all such as are personal to himself, as well as such as are common to all the codebtors.
"He can not plead such exceptions as are merely personal to some of the other codebtors."
As the principal debtor has been released by the Louisiana Deficiency Judgment Act, so, too, is his co-debtor in solido released. The jurisprudence recognizes that if the creditor impairs the solidary co-debtor's subrogation rights, the co-debtor is released. See, e. g., Wilkinson v. Adams, 179 La. 630, 154 So. 630 (1934); Isaacs v. Van Hoose, 171 La. 676, 131 So. 845 (1930); Gay and Co. v. Blanchard, 32 La.Ann. 497 (1880).
I conclude, as did the Court of Appeal, that the deficiency judgment is barred.
For the reasons assigned, I respectfully dissent.

ON REHEARING
CALOGERO, Justice.
As related in our opinion following the original hearing in this matter, this suit was filed by Exchange National Bank in an attempt to collect money purportedly owed by defendants Ellis Henican, Philip E. James and Frank Spalitta. Defendants were guarantors relative to certain credit extensions to Place Vendome Corporation. Place Vendome Corporation is a subsidiary of Southern Land Title Corporation, both of which are presently in bankruptcy proceedings under Chapter X of the Bankruptcy Act, the chapter providing for corporate reorganization. 11 U.S.C. §§ 501 et seq. Other pertinent facts are related at length in the original opinion and will not be repeated here.
In our original opinion we held that the Louisiana Deficiency Judgment Act[1] is not applicable to sales under Chapter X of the Bankruptcy Act. Accordingly, we reversed the decision of the Court of Appeal and set aside the ruling of the trial court sustaining defendants' exceptions of no cause and no right of action, and ordered the case remanded to the trial court for further proceedings, in effect giving renewed life to Exchange National Bank in its attempt to collect from the guarantors[2] the unpaid portion of the debt.
*346 We granted a rehearing in this matter upon application of defendants to reconsider their contention that, to preserve the right to deficiency judgment, the sale in the bankruptcy reorganization was required to be (and yet was not) in compliance with Louisiana's Deficiency Judgment Act, as well as to reconsider a contention raised for the first time in defendants' postargument brief on original hearing that Exchange released the principal debtor, Place Vendome Corporation, without an express reservation of rights against defendant co-debtors, thus effecting a release of defendants under Civil Code Article 2203.
After careful consideration we reinstate the opinion and decree which we rendered originally.
Taking up in reverse order defendants' arguments presented upon rehearing, we will first consider defendants' contention that they have been discharged by virtue of plaintiff's remission of conventional discharge of Place Vendome Corporation.
Defendants call our attention to Article 2203 of the Louisiana Civil Code which provides as follows:
"The remission or conventional discharge in favor of one of the codebtors in solido, discharges all the others, unless the creditor has expressly reserved his right against the latter.
"In the latter case, he can not claim the debt without making a deduction on the part of him to whom he has made the remission."
They thereupon direct our attention to the petition filed by Exchange National Bank and its affiliate, National American Bank of New Orleans, in the debtor corporation's reorganization in federal court in which the two banks as joint petitioners sought a sale of mortgaged property.
In that petition seeking the sale of the immovable property, mortgaged to secure *347 the debt which was principally that of Place Vendome Corporation, plaintiff and its affiliated New Orleans bank made the following representations to the federal court:

"16.
"Petitioners further represent that if they are the successful bidders at said proposed sale, they will, prior to passing of the Act of Sale, to them of said properties:
"(a) Pay to the Trustee the general overhead expenses in connection with the operation of said properties and a reasonable contribution to administrative costs herein;
"(b) Release the debtor-corporation, and any of its subsidiaries, from liability for any deficiency which may become due on the mortgage indebtedness."
This statement of intent to release the debtor corporation from any deficiency which may become due was not carried forward into either the subsequent report of the special master or the district court order confirming that report and authorizing the sale. Nor was there executed thereafter any instrument, prior to the passing of the Act of Sale or otherwise, in which the plaintiff bank did formally comply with the promise contained in the petition.
Petitioners were the successful bidders at the auction sale, for the property was purchased by plaintiff's co-petitioner and local affiliate.
Furthermore plaintiff did not at any time expressly reserve its rights against the guarantors, either in the language employed in the petition or in any document executed thereafter.
Plaintiff takes the position that since the proposal contained in the petition was not thereafter made a prerequisite to the sale of the property, and was not thereafter incorporated in an independent consummating instrument by the plaintiff bank, such promise or commitment in the bank's petition should be considered as irrelevant surplusage.
Defendants' contention, on the other hand, is that the debtor corporation has effectively been released inasmuch as the property was sold at auction in the reorganization (and purchased by plaintiff's affiliate), the court having been induced to order the sale upon plaintiff's promise to release the debtor corporation from any deficiency. They support their position by reference to a doctrine of preclusion (alternately designated as judicial estoppel), a purportedly applicable legal principle which is frequently employed in the federal jurisprudence. Under this principle "a party may be precluded by a prior position taken in litigation from later adopting an inconsistent position in the course of a judicial proceeding." 1B J. Moore, Federal Practice ¶ 0.405, at 765 (2nd ed. 1974). See also In re Double D Dredging Company, 467 F.2d 468 (5th Cir. 1972) and Scarano v. Central R. Co. of New Jersey, 203 F.2d 510 (3rd Cir. 1953). Defendants contend that the same result is dictated by principles of Louisiana law, citing Article 2291 of the Civil Code (judicial confession), Johnson v. Marx Levy & Bro., 109 La. 1036, 34 So. 68 (1902); Williams v. Gilkeson-Sloss Comm. Co., 45 La.Ann. 1013, 13 So. 394 (1893); Gaudet v. Gathreaux, 40 La.Ann. 186, 3 So. 645 (1888); Wright, Williams & Co. v. Trustees of the Bank of the United States, 7 La.Ann. 123 (1852); Gremillion v. Dubea, 108 So.2d 238 (La. App.2nd Cir. 1958) and Gulf States Finance Corp. v. Moses, 56 So.2d 221 (La.App.2d Cir. 1951).
Although the foregoing presents an interesting and perhaps close legal issue, there are two reasons why we find it inappropriate and unnecessary to resolve it at this stage of the litigation. One reason for our decision is that defendants have not filed an answer which incorporates the affirmative defense of conventional or other discharge. See La.C.C.P. Art. 1005 which requires pleading of affirmative defenses *348 including "extinguishment of the obligation in any manner."
Furthermore, the only matter which we have been properly called upon to review in this litigation is the validity of the judgment of the district court and Court of Appeal dismissing plaintiff's petition on exceptions of no cause and no right of action, upon a finding that non-compliance with Louisiana's Deficiency Judgment Act prevents plaintiff's recovering from defendants.
The only reason documents relating to plaintiff's purported remission or conventional discharge of Place Vendome Corporation were even included in the record is that they were attached to an affidavit filed by counsel for defendants in connection with their exceptions of no cause and no right of action.
Although we may have the right, in the interest of expediting termination of this litigation, to decide this issue which is not procedurally before us,[3] we find the state of the record with respect to this conventional discharge matter incomplete.
When and if an affirmative defense of conventional discharge is urged, such evidence as may be presented will likely be admissible. This evidence might include testimony about why the promise to release the debtor corporation was a part of the bank's petition and why it was excluded from the master's report and trial court's order authorizing the sale.
For these reasons, we do not resolve the issue not properly before us in this litigation concerning whether plaintiff has remitted or conventionally discharged Place Vendome Corporation from any deficiency judgment, and if so, whether defendants, solidary co-debtors with Place Vendome, have likewise been discharged under the provisions of Article 2203 of the Civil Code.
With respect to defendants' initial argument on rehearing, that this Court erred in its original opinion when we found Louisiana's Deficiency Judgment Act not applicable to sales under Chapter X of the Bankruptcy Act, we have studied that contention anew and find it to be without merit.
For the reasons more fully set out in that original opinion, we conclude anew that Louisiana's Deficiency Judgment Act is not applicable to sales under Chapter X of the Bankruptcy Act and that plaintiff's petition in the district court should not for that reason have been dismissed.
Accordingly, our opinion and decree upon original hearing are reinstated. We reverse the decision of the Court of Appeal and set aside the ruling of the trial court sustaining the exceptions of no cause and no right of action. We order the case remanded to the trial court for further proceedings.
SANDERS, C. J., dissents, adhering to the views expressed in dissent in original hearing.
SUMMERS, J., dissents and adheres to the views expressed by the Chief Justice in his dissent in original hearing.
MARCUS, J., dissents.
NOTES
[1] The rules governing deficiency judgment in Louisiana are set forth in Articles 2771 and 2772 of the Code of Civil Procedure, and La.R.S. 13:4106 and 4107.
[2] Defendants are actually solidary co-debtors, along with Place Vendome Corporation, as is evident from the instrument they signed, Continuing Guaranty. They were not simply sureties. The instrument provided as follows:

"Continuing Guaranty . . .
"IN CONSIDERATION of the National American Bank of New Orleans, at my request giving or extending terms of credit to
PLACE VENDOME CORPORATION hereinafter called debtor, I hereby give this continuing guaranty to the said National American Bank of New Orleans, New Orleans, La., hereinafter referred to as the Bank, its transferees or assigns, for the payment in full together with interest, fees and charges of whatsoever nature and kind, of any indebtedness, direct or contingent of said debtor to said Bank, up to the amount of ($1,824,234.00) ONE MILLION EIGHT HUNDRED TWENTY-FOUR THOUSAND, TWO HUNDRED THIRTY-FOUR & NO/100 DOLLARS; whether due or to become due, and whether now existing or hereafter arising; I hereby bind and obligate myself, my heirs and assigns, in solido with said debtor, for the payment of said indebtedness precisely as if the same had been contracted and was due or owing by me in person, hereby agreeing to and binding myself, my heirs and assigns, by all the terms and conditions contained in any note or notes signed or to be signed by said debtor, making myself a party thereto; and, waiving all notice, including notice of demand, dishonor, or protest, and all pleas of discussion and division, I agree to pay upon demand at any time to said Bank, its transferees or assigns, the full amount of said indebtedness up to the amount of this guaranty, together with interest, fees and charges, as above set forth, becoming subrogated in the event of payment in full by me to the claim of said Bank, its transferees or assigns, together with whatever security it or they may hold against said indebtedness. The Bank may extend any obligation of the debtor one or more times, and may surrender any securities held by it without notice or consent from me, and I shall remain at all times bound hereby, notwithstanding such extensions, and/or surrender.
"This guaranty shall continue in full force and effect and shall be terminated only upon receipt by the Bank of written notice of revocation from me, or upon receipt of notice of my death, and that, in either of said events, my liability hereon shall continue as to obligations then existing, and as to any and all renewals or extensions thereof made after said event or events.
"IT IS EXPRESSLY AGREED that this continuing guaranty is absolute and complete, and that acceptance and notice of acceptance thereof by the Bank are therefore unnecessary and they are hereby expressly waived." (Emphasis provided)
[3] Plaintiff's counsel has not specifically protested defendants' raising this issue and has argued the demerit of defendants' position.