CULPEPPER, Judge.
This is a suit by ordinary process for the balance due on a promissory note and recognition of a chattel mortgage on certain household furnishings. The defense is that the money was actually loaned for defendant’s minor son to purchase an automobile, which was also originally covered by the chattel mortgage; that the plaintiff loan company procured an exchange of the automobile for a different vehicle and released the first automobile from its mortgage; that this was in effect a scheme to repossess and sell the automobile without appraisal; hence that the indebtedness is fully satisfied under the provisions of the *724 Deficiency Judgment Act.[1] From an adverse judgment the defendant appealed.
The issue is whether the Deficiency Judgment Act is applicable under these particular circumstances.
There is little dispute as to the facts. On November 18, 1965, the defendant, W. W. Jobe, and his 18 year old son, William R. Jobe, purchased a 1963 model Chevrolet Monza from Bruce’s Auto Sales in Lafayette for the price of $1,340. The automobile was financed by the plaintiff, Liberty Loan Corporation of Lafayette, Inc. The amount of the loan was $2,065.21, which included the price of the car, insurance, interest, etc. A note for this amount was signed by W. W. Jobe and his son, William R. Jobe, as co-makers. The chattel mortgage securing the note covered the automobile and also certain household goods located in the home of Mr. W. W. Jobe. Title to the automobile was issued in the name of the son, William R. Jobe.
About one month later, young Jobe went back to Bruce’s Auto Sales and told them he needed a larger automobile to transport a crew of men with whom he worked. He was shown several automobiles and finally they agreed on a 1960 Impala Chevrolet as an even swap, provided the plaintiff loan company was willing to release the Monza from its chattel mortgage.
Young Jobe then went to Liberty Loan and they agreed to release the Monza. The manager explained that the father’s signature on the note was good security and he considered the Monza of very little value anyhow. Young Jobe then went back to Bruce’s Auto Sales where he signed the papers transferring title to the Monza to Bruce, who in turn executed' a bill of sale to Jobe for the Chevrolet Impala, which Jobe drove home that day.
A few days later, young Jobe went to Liberty Loan and executed a second chattel mortgage in their favor, this one covering the 1960 Impala. Counsel for defendant argues persuasively that this shows Liberty Loan did not simply voluntarily release the Monza, but did so only as part of a scheme with Bruce’s Auto Sales to repossess and sell the Monza and take a mortgage on the Impala in its place. Counsel tried to evoke testimony to show that there was some kind of agency relationship or collusion between Liberty Loan and Bruce’s Auto Sales, but he was unable to do so. Although it is perhaps strange that Liberty Loan released the Monza without any assurance of obtaining a mortgage on the Impala in its place, this is apparently what happened. Insofar as the record shows, Liberty Loan and Bruce’s Auto Sales dealt “at arm’s length” in these transactions.
About six weeks after he acquired the Impala, young Jobe and his father decided it was a “lemon” because it was in constant need of repairs. They took the vehicle back to Bruce’s Auto Sales and asked that the sale be rescinded, but this was refused. However, after prolonged discussion between Mr. Jobe and Bruce’s Auto Sales, it was agreed that he leave the 1960 Chevrolet Impala on the lot and they would try to sell it for him.
No payments were ever made on the note. After two monthly installments became past due these proceedings were instituted.
Defendant cites several cases which recognize the public policy con *725 siderations of the Deficiency Judgment Act and hold that any practice or scheme whereby mortgaged property is sold by the mortgagee, at either public or private sale without appraisement, the mortgagee will not be allowed to proceed for the deficiency on the note. Home Finance Service v. Walmsley, La.App., 176 So. 415; Farmer v. Smith, La.App., 57 So.2d 778.
Defendant relies in particular on Hammond Finance Company v. Carter, 83 So.2d 682 (La.App., 1st Cir. 1955) in which the mortgagor sold his truck to a third party and the finance company released its mortgage on the truck in consideration of the sum of $200 paid on the note. The court found there was a bona fide sale from the owner-mortgagor of the truck to a third party, rather than a surrender of the vehicle to the finance company and a resale to the third party. The court of course, refused to apply the Deficiency Judgment Act, but, in dicta, it used the following language on which defendant relies:
Perhaps a different situation would be presented to us if rather than a sale of one of three mortgaged items from defendant McDonald to Ramsey, with defendant simply agreeing to release its mortgage against the property affected and making a collateral agreement with Ramsey to finance his purchase of the truck, a situation was indicated where the mortgagee finance company had actively participated in the sale by suggesting it, securing a purchaser, securing agreement as to the price, etc. — in short, indicated a scheme to circumvent the provisions of the Deficiency Judgment Act, by forcing the mortgagor to sell the property to a third party.”
It is defendant’s contention that the finance company in the present case procured or forced the exchange whereby young Jobe swapped his Monza for the Impala. Apparently defendant contends the finance company did this in order to repossess the Monza and sell it for some advantage to itself. The record does not show there was any such advantage. Nor does it show that Liberty Loan did anything to persuade or force young Jobe to make this exchange. He did it entirely of his own volition.
We agree with the trial court’s finding of fact that “This court cannot conclude that plaintiff loan company participated in the transaction other than as a money lender and holder in due course of a negotiable instrument.”
For the reasons assigned, the judgment appealed is affirmed. All costs of this appeal are assessed against the defendant appellant.
Affirmed.
On Application for Rehearing.
En Banc. Rehearing denied.

. LSA-R.S. 13:4106 provides: “In any case where any mortgagee or other creditor takes advantage of the waiver of ap-praisement of the debtor and provokes a judicial sale, without the benefit of ap-praisement, of the encumbered property, whether real or personal, or of both characters, and the proceeds of such sale are insufficient to satisfy the debt for which the property is sold, the debt nevertheless shall stand fully satisfied and discharged, and such mortgagee or other creditor shall not thereafter have the right to proceed against the debtor or any other of his property for such deficiency, in any manner whatsoever.”