SARTAIN, Judge.
Universal C.I.T. Credit Corporation, (hereafter, C.I.T.) has brought this action seeking judgment on two notes executed by John W. Love, Robert E. Love, and others and purportedly guaranteed by a written contract of guaranty entered into by Arlo Kent Porter, also a defendant, and other persons.
More particularly, in 1965, and for several years after that time, C.I.T. had arranged the mass financing of new and used automobiles in Baton Rouge, Louisiana, for the Love business interests which operated under the name Love Motor Co., Inc. This financing consisted of plans for the wholesale floor planning of automo *283 biles and, among other things, arrangements whereby C.I.T. extended credit on demonstrator automobiles for the principals.
The two notes on which judgment is sought were given in connection with demonstrator automobile transactions. The first, executed on April 19, 1967, was in the amount of $2,850.00 bearing eight percent interest and providing for fifteen percent attorneys’ fees in case of collection and upon which there was an alleged balance of $1465.00 upon filing of this suit. The second note sued Upon here was given on the same date and was in the amount of $1620.24, bearing similar interest and attorneys’ fees, and upon which there was an alleged balance of $347.73. For reasons which will be made clear, it is unnecessary to list the various makers on each note.
Both notes are captioned and referred to as “rewrite notes” which are, according to the record, paper given in renewal of previous notes which have been written usually in eleven even installments with a large “balloon” twelfth payment. When the twelfth payment became due, C.I.T. would, at the request of the maker, “rewrite” or prepare a new note covering the remaining “balloon” balance providing new equal installments over a period of months.
The suit was tried against defendant, Arlo Kent Porter, only and judgment was rendered for the plaintiff on the two notes in the total amount of $1812.73, plus interest and attorneys’ fees, that amount being the combined total of the balances due on both obligations, it being the judgment of that court that Porter was bound for these debts as one of several signers of the agreement which guaranteed to C.I.T. the unsatisfied debts of Love Motor Co., Inc. We affirm that judgment.
The Guaranty agreement, admittedly executed by Porter, and upon which the plaintiff relies for recovery is quoted below.
The defendants’ attempt to negate Porter’s obligation under this agreement was several defenses. They initially attack the document generally as being ambiguous and assert that the evidence adduced at the trial does not support the finding that the two notes were issued in payment for a debt arising out of “wholesale floorplan arrangements, salesman demos and employee accounts”, the guaranty agreement being restricted to those types of obligations in the typed-in heading of that document; they further contend that there was no showing that Love Motor Co., Inc. was actually a corporation and, even if it was, they argued that Porter was only liable for the debts of that corporation and that there is no proof that the two notes here sued upon were anything other than the personal obligations of the various makers, of which Porter was not one.
We think a reading of the document dispels any doubt as to its ambiguity and, indeed; the appellants have not pointed out to the court where they believe it to be unclear. We find that it clearly obligates the defendant for the payment of these debts if proper proof has been made that they were in the category of debts guaranteed.
Mr. Louis L. Simmons, a district manager for the plaintiff for almost twenty years, positively stated that the two notes were in payment for demonstrator automobiles, which certainly is the logical conclusion since the chattel mortgages securing these two obligations, entered into this record as Exhibits P-3 and P-4, recite that each sale was from Love Motor Co., Inc. to either R. E. Love or J. W. Love, thus indicating a demonstrator sale. That testimony stands uncontradicted in the record before us and we think plaintiff has adequately established that these transactions were among those specifically guaranteed by the document.
As for the question of whether Love Motor Co., Inc. was actually a corporation or not, we note, as did the trial *284 judge, that the defendant offered no proof whatsoever that this entity was not a corporation. We also think it would be patently inequitable to allow one who had guaranteed the debts of a corporation to later deny its existence when called upon to satisfy such a debt. Tulane Improvement Co. v. S. A. Chapman & Co., 129 La. 562, 56 So. 509 (1911).
The question, however, of whether the two notes here were actually debts of the corporation, as opposed to personal debts, merits consideration, as the appellant points out that the notes themselves do not specifically state thereon that they are obligations of Love Motor Co., Inc. We find that the preponderance of the evidence dearly indicates that these notes were given in satisfaction of guaranteed corporate obligations.
The note bearing C.I.T. transaction number 86003-R R — denotj^g rewrite) is signed by Robert E. Love and Charles B. McCollister; the chattel mortgage securing that note and also bearing the same transaction number indicates that the seller is Love Motor Co., Inc., the buyer being R. E. Love. The note bearing C.I.T. transaction number 86137-R is also secured by a chattel mortgage reflecting the identical number; the seller is again Love Motor Co., Inc., the buyer being J. W. Love. Mr. Simmons testified that the rewrite notes were given in payment of the obligations reflected by the chattel mortgages, which were Love, Inc. debts. The defendant has offered no proof refuting the evidence that these were corporate notes given for corporate debts, even though the corporate name does not appear thereon; it seems clear, as found by the court below, that these debts and the note given in payment thereof were generated in the operation of the business and were Love Motor Co., Inc. obligations, thus falling within the guaranty agreement signed by Porter.
The appellant also urges upon the court that the statutory provisions pertaining to deficiency judgments, LSA-R.S. 13:4106 et seq., have not been complied with because these automobiles were sold without appraisal and, as such, would deny to plaintiffs here a judgment upon the notes sued on. The plaintiffs, however, had nothing to do with the possession or sale of these automobiles; on the contrary, they permitted the Love principals to sell the vehicles to third party purchasers and apply the proceeds to debts owed C.I.T. There is no evidence that the plaintiff participated in the sales in any way other than as a money lender and, in view of such a finding, the Deficiency Judgment Act is, therefore, inapplicable. See Liberty Loan Corporation of Lafayette, Inc. v. Jobe, 203 So.2d 723 (La.App. 3rd Cir. 1967).
The appellant also relies upon the articles of our Civil Code dealing with suretyship and particularly Art. 3061 which provides as follows:
“The surety is discharged when by the act of the creditor, the subrogation to his rights, mortgages and privileges can no longer be operated in favor of the surety."
They arguing that Porter, as surety, was discharged in his obligation when the two vehicles were sold without his knowledge and consent, thus impairing his security. This argument fails, however, in view of these terms of the guaranty agreement signed by Porter:
“You may renew, extend or transfer any obligations of Dealer or of its customers or of co-guarantors, may accept partial payments thereon or settle, release, compound, compromise, collect or otherwise liquidate any obligation or security therefor in any manner and bid and purchase at any sale without affecting or impairing the obligation of any of us hereunder.”
We are aware of no authority for the proposition that the rules of suretyship cannot be waived. Indeed, in C.I.T. Corporation v. Rosenstock, 205 So.2d at 81 (La.App. 4th Cir., 1968), principally relied *285 upon by appellants, such a waiver was recognized and such was entered into by Porter in this case.
The judgment of the court below will, therefore, be affirmed, all costs of this appeal to be charged to appellant.
Affirmed.